The opinion of the court was delivered by
Horton, C. J.:
After this case was called for trial, and a» jury had been impanneled and sworn, upon the attempt on the part of defendant in error, (plaintiff below,) to introduce her evidence, the plaintiff in error, (defendant below,) objected to any evidence being offered, for the reason that the petition does-not state facts sufficient to constitute a cause of action against the defendant. The objection was overruled by the court, and this ruling is the first error assigned. It is contended on the-part of the company that railway companies in this state are-required to construct and keep in repair the crossings at only regularly laid out public highways; that it appears from the-petition the way traveled by Mrs. Long on or about July 17,. 1880, was not a regularly laid out public highway — only a highway by use — therefore the company was not obliged to-construct and keep in repair the crossing in the city of Burlington, where the railroad crosses this way, and was not guilty of negligence in refusing or omitting to do so. There- *691 are three several statutes in this state concerning the duty of railway companies to construct crossings at all points where any railway crosses any highway. Section 47, ch. 23, Gen. Stat. 1868, (§47, ch. 23, Comp. Laws 1879,) provides that—
“Every railway corporation shall, in addition to the powers • hereinbefore conferred, have power . . . Fourth, to construct its road across; along or upon any stream of water, watercourse, street, highway, plank-road or turnpike which the route of its road shall intersect or touch; but the company shall restore the stream, watercourse, street, highway, plank-road or turnpike thus intersected or touched, to its former state, or to such a state as to have not necessarily impaired its usefulness. Nothing herein contained shall be construed to authorize the construction of any railway not already located in, upon or across any street in any city incorporate, or town, without the assent of the corporate authorities of such city.”
Sec. 2, ch. 81, Laws of 1869, (§ 38, ch. 84, Comp.'Laws 1879,) provides:
“At any or all points where any railroad crosses any public highway the railroad company owning said railroad shall, without unnecessary delay, construct good and sufficient and safe crossings.”
Sec. 1, ch. 105, Laws 1876, (§ 41, eh. 84, Comp. Laws 1879,) provides:
“It shall be the duty of each and every railway company or corporation owning, controlling or operating any kind of railroad within this state, to construct and keep .in repair at each crossing of any regularly laid out public highway a good and substantial crossing, by securing on each side of each rail a board not less than twelve feet long and not less than ten inches wide and two inches thick, and shall fill the space between the two inside boards with gravel or broken stones, or shall floor the space with boards not less than two inches thick and .twelve feet long.”
1. Sec. 2, ch. 81, Laws isg^ We suppose that § 2 of ch. 81, Laws of 1879, may be wholly disregarded as invalid, being in violation of § 16, art. 2 of the constitution of the state. The title of , 1 ,n , . , . . ^ . the bill, which is chapter 81, is as follows: An act to require railroad companies to make cattle-guards and to pay damages that individuals may sustain.” *692 Within the previous decisions of this court, § 2 of ch. 81 is a nullity. (Swayze v. Britton, 17 Kas. 625; Comm’rs of Sedgwick Co. v. Bailey, 13 Kas. 600; State v. Barrett, ante, p. 213.)
2 Highway Sikoaaftaty of company. Therefore, the question reverts whether under the act of 1868 or the act of 1876 the railway company was required put in and maintain a road-crossing at the place where Mrs. Long received her injuries, duty imposed by the statute of 1868 upon the railroad corporation required the company to restore a legal highway crossed by it to its former state, or to such state as not to have necessarily impaired its usefulness. But when the highway had been fully restored to such condition the railway company was under no obligation to maintain thereafter a sufficient or safe crossing. Or, in other words, after a highway had been fully restored to its former state, if any highway existed either by statute, dedication or prescription, the corporation would be under no obligation to keep the same in repair. (Railway Co. v. Maurer, 21 Ohio St. 421.) But the petition can hardly be said to charge an omission of duty under the act of 1868. It is nowhere clearly alleged that the railway company, where it crossed the said alleged way, failed to restore it to its former state, when it originally constructed its road across such way. Certainly, if at the time of constructing its road across the way at the place of the injury, it had restored the highway to its former state, or to such a state as to have not necessarily impaired its usefulness, the fact that it subsequently became out of repair or defective would not have rendered the railway company liable for injuries resulting from such defects. No duty is imposed by this statute upon the company to keep the highway in repair. Again, however, according to the petition the way had not been used as a public highway for the period of fifteen years, at the time of the construction of the railroad over it; therefore, at such time the highway was not a public highway by use or prescription. The petition does not charge that the highway was established by dedication, and therefore under the allegations of 'the petition, the *693 railway company at the time of the construction of its road had the right to deny to the public free use of crossing over its road-bed, as the use of the way at the crossing by the .public had not been sufficiently long for the public to have acquired the right of way for a public highway. A highway may be established by user, but such use and enjoyment must be continuous for such a period of time as would bar an action for the recovery of real estate by the statute of limitations, and must generally be so continued and uninterrupted, with the knowledge, assent or acquiescence of the owner of the land. Such petition charges that the railway company constructed and commenced to operate its road about eleven years after the said way was in use for general travel by the public.. Therefore its use by the public before the construction of the railroad was not sufficiently long to to constitute it as a highway by user.
*695 ' unauiy exist- *693 But as the petition alleges “ That said public road was and is a road of common and general travel by the public, and had existed and been so used and traveled continuously by the public as a highway for more than twenty-one years prior to the happening of the injuries complained of,” and therefore alleges that at the happening of said injuries the said way was and had been in the uninterrupted use of the public as a highway for such a period of time as would bar an action for the recovery of real estate by the statute of limitations, we are called upon to determine the question, whether this road which had been traveled upon by the public for a period exceeding fifteen years, is within the terms of § 1, ch. 105, Laws of 1876, requiring railroad companies to construct and keep in ’repair at each crossing of any regularly laid out public highway, a good and substantial crossing. Is a way established by user a regularly laid out public highway? The first impressions of the writer upon the hearing of the argument in this case were, that a way used by the public generally for a period of time as would bar an action for the recovery of real estate, comes within the statute. Further consideration, however, has brought our mind to a *694 different conclusion. While the statute of 1868 requires railroad companies crossing any “highway, plank-road or turnpike,” to restore it to its former state, it leaves the subsequent repairs of the highway, plank-road or turnpike to the highway officials. This, we suppose, upon the theory that as the property of the railway company is subject to the payment of taxes, road and otherwise, the same as the property of any individual in the road district, that it is but fair, after the highway so crossed by the railway is restored to its former condition, that the company shall be under no more obligation to keep it thereafter in repair, than any individual in the district. Now the act of 1876 casts an additional burden upon railway companies. It requires of such companies to construct and keep in repair at each crossing of “any regularly laid out public highway” a good and substantial crossing, by securing on each side of each rail a board not less than twelve feet long and not less than ten inches wide and two inches thick, the space between to be filled with gravel or broken stones, or to floor the space with boards not less than two inches thick and twelve feet long. As the legislature has specifically confined such additional duty or burden to the crossings of “regularly laid out public highways” only, we do not think we have the right, by judicial construction, to extend or enlarge the terms of the statute, and thereby to impose additional burdens or duties upon railway companies. In the statute of 1868 the word “highway” was used. In the statute of 1869 the words “public highway” were employed. -In §1, ch. 105, Laws 1876, only “regularly laid out public highways” are mentioned. Then again, by the terms of- § 2 of eh. 105 a penalty is provided of a fine of five dollars for each and every day that a railroad company fails to comply with the provisions of §1. While all statutes, whether penal or remedial, are to be construed according to the apparent intent of the legislature, to be gathered from the entire language used in connection with the subject-matter and purpose of the law, it is a cardinal rule of construction that pen *695 alties are not to be enforced by enlarging the scope of the statute. Where penalties are provided, the statute must be •strictly construed. (Snyder v. North Lawrence, 8 Kas. 82.) If the railway company were charged with failing to comply with the provisions of the first section of said ch. 105, and an attempt were made by action to make it liable to a fine of five dollars for each and every day it had so failed to comply therewith, we do not think that evidence showing that the highway had been in use for public travel would be sufficient ■upon which to base a recovery of the statutory penalty. The legislature has seen fit to limit the keeping in repair of crossings over highways by railway companies to those highways that have been “regularly laid out.” The statute of 1876 is - plain and unambiguous. There is no room left for construction, and therefore within the statute, the way mentioned and referred to in the petition is not such a highway as the railroad company was required to keep in repair at the crossings over it in the city of Burlington. It was undoubtedly the intent of the legislature to require crossings to be kept in repair by the railway companies in the state over such public highways only as are regularly laid out; this would embrace all highways laid out ■under the provisions of any statute, and all streets or roads laid out by dedication for such purpose, where there is a public record establishing the highway or street. It is more in reason that the legislature in adopting the statute of 1876 had in view such highways as the railroad companies could ascertain had existance from the statutes or public records, and not such highways as the existence of which depended upon the parol evidence of the people of the neighborhood using temporarily a way for travel not legalized or laid out by statute, or established by dedication upon any public record.
*698 *695 A Wisconsin statute requires, under a penalty for neglect, the erection of guide-boards at certain points upon “legally laid out roads.” Held, That the words “legally laid out ¡roads” apply only to roads laid out by the authorities in accordance with the statute upon that subject, and not to roads *696 which have become such by mere use or dedication. See State v. Huck, 29 Wis. 202; Doughty v. Brill, 36 Barb. 488; Christy v. Newton, 60 id. 332; Talmadge v. Huntting, 29 N.Y. 447; Parker v. People, 22 Mich. 92; Roberts v. Highway Comm’rs, 25 id. 23; People v. Smith, 42 id. 138; State of Wisconsin v. Siegel, 25, Alb. L. J. No. 23, 458. It is well settled that user alone of uninclosed and wild prairie land will not support a prescription for a highway. (State v. Railway Co., 45 Iowa, 143.) In this state, where so much of the land is yet vacant and uncultivated, many roads are traveled for a great length of time without the intention or expectation on the part of the public or of the owners of the premises that such ways are permanent, or that such roads are to be considered as public highways or legally laid out highways. As other roads are established or regularly laid out, these ways so used temporarily by the public are vacated, chauged and fenced up without resort to the usual proceedings for the vacation and change of public highways; and it would be an exceedingly harsh doctrine to say that such roads, running over vacant and uncultivated land, have become public highways by user when the owners of the premises never intended to consent thereto. Again, it is frequently the practice, even in our towns and cities, which are laid off into lots, blocks,, parks, alleys, streets and avenues, for the public, where the lots and blocks are vacant and uninclosed, to travel across-them and establish by use for a time, a road for the travel of the public generally, regardless of the existence of streets-regularly laid out. Often the roads thus traveled are so used for a long time, but whenever the lot or block thus occupied by travel is wanted by the owner for actual occupation, the road so traveled is at once closed, and the lot or block inclosed without regard .to the travel across the same; and the user alone of such uninclosed and vacant lot or block in this manner ought not to be sufficient to establish over the premises a public highway. The evidence in this case illustrates thist The place where the accident occurred is in the city of Burlington. There is one street ninety feet north of it, and an *697 other about one hundred and thirty feet south. In 1857, persons commenced to travel through Burlington to the westward; there were two routes traveled — one on the north side of Rock creek, and one on the south side. The latter was commonly known as the highway leading from Burlington to Verdigris Falls. This was known and designated as “the Eureka road.” The travel commenced over this route while most of the land belonged to the government, and was traveled before any highways had been legally established or otherwise regularly laid out. The line of travel on this road had changed from time to time and from place to place, as the occupation and improvement of the premises over which it ran required. At the time of the accident nearly the whole of the route originally traveled fr-om Burlington west to North Big creek or Verdigris Falls had been vacated or changed from its original direction, excepting a short distance thereof, most of which was near to or within the city of Burlington. The long road, running over uninclosed and uncultivated land, had been curtailed by fences and inclosures, until all that was left of the original route was the part adjacent to Burlington, and the part within the city; and according to the testimony the road within the city ran in a zigzag direction, and was traveled because it was a little nearer and a little more convenient than to go on the streets. Within the city, when persons fenced and improved the lots crossed by this road, the road was at once changed to run around such inclosures and fences. It did not occupy any public street of the city,.nor any premises dedicated and set apart upon the plat of the city for a public highway, nor was it regularly laid out under the provisions of any statute. While therefore there was ample proof in the case that portions of the road had been very generally traveled by the public ever since 1857, yet the general direction of the road had been ' during all the time over vacant and uncultivated land. From time to time, as the settlers came into the country and took up and'occupied the land, they fenced up the prairie and changed the road from one place to another. The road there *698 fóre, in our opinion, is not within the terms of §1 of said ch.105, Laws of 1876. It is not a regularly laid out public highway. The travel going over it was liable at any time to be diverted from' the road by the changes caused by the fencing-up and settlement of the country and the inclosing or improvement of lots before us about the railroad company being liable independent of the statute. Not so. Passing beyond the petition, the evidence does not establish such a public highway, in view of the frequent changes of the route of the road, as that at common law the company would be liable for creating an obstruction or defect by the construction of its road-bed and •track across it. within the city. Something was said in the oral argument
Our attention has been called to the case of Kelley v. Southern Minn. Rld. Co., (9 N. W. Reporter, No. 8, p. 588,) in which it was decided that where a road is used openly and notoriously by the public as a highway, and a railroad company recognizes it as such by permitting the public to cross its track, and by attempting to maintain a public crossing .at that point, it is immaterial whether the road be a legal highway or not, and that under such circumstances the company is bound to exercise the same precautions to keep crossings in repair as though the road were in fact a legal highway. The allegations in the petition do not present such a ■case as is referred to in that decision. It is nowhere alleged in the petition that the railway company attempted to maintain a crossing at the point where the plaintiff below was injured. On the other hand, the allegations are, that while the public traveled continuously on the way as a highway for twenty-one years, the railroad company “wholly failed, neglected and refused to construct a good, sufficient and safe ■crossing at the point where said railroad crosses said public highway, and for more than ten years last past has wholly neglected and refused to construct any good, sufficient and safe ■crossing whatever at the point where the railroad crosses said public road, although often requested so to do.” Instead of *699 alleging that the railroad company recognized the way as a public highway, and permitted the public to use it as a public highway, and attempted to maintain a crossing at the point where the railroad crosses the way, these latter allegations tend to show that the railway company did not recognize or treat the road as a regularly laid out public highway, or as any legal highway, because the inference of such allegations is that the railway company never constructed or maintained any crossing at the point where the injuries complained of were inflicted. Apart, however, from this view, we are to be controlled by the statute of our own state. Under the provisions of the statute of 1868, the duty is imposed upon railway corporations crossing the highways, to restore them to their former state. But the statute of 1876, which requires railway companies to keep in repair at each crossing of the highway good and substantial crossings,.applies only to such highways as have been “regularly laid out.” The petition therefore is held by us not to state facts sufficient to constitute a cause of action. In its ruling upon the petition, in the admission of evidence and- in the direction to the jury, the trial court seems to have held to the theory that all railroad companies in this state are required by statute to construct ■and maintain good, sufficient and safe orossings at all points where their railroad crosses any way used for travel by the public for fifteen years or upwards, whether the road runs over vacant or uninclosed lands or not, and that a neglect or refusal on their part to do so renders them liable to any person who sustains damages thereby for the full amount of such damages. This theory, so far as to the maintaining of crossings, is erroneous, excepting where the highways have been regularly laid out.
The judgment of the district court will be reversed, and the cause remanded.
All the Justices concurring.