Dallas & Greenville Railway Company et al. v. Wm. Able.

No. 2595.

1. **Assignment of Error.**—Where errors in the charges given or refused are relied upon and the charges attacked contain more than one proposition, the assignment must designate which part of the charge is complained of.

2. **Railroad Crossing a Public Road.**—The Revised Statutes, article 4170, requiring railroad corporations to restore the highway crossed by the railroad to its former state, "or to such state as not unnecessarily to impair its usefulness," does not exact of railway companies that such crossings shall be restored to a condition as would not necessarily impair the usefulness of the crossing.

3. **"Necessarily" and "Unnecessarily."**—These terms can not be considered synonymous, though sometimes used interchangeably. 27 Kan., 684, M. K. & T. Ry. Co v. Long.

4. **Care Required by Party Crossing Railway Track.**—The degree of prudence required of one approaching a railway crossing is that of ordinary care. Care must always be proportionate to the dangers to be avoided. The test is, what would a man of ordinary prudence do under the same circumstances?

5. **Charge as to State of Railway Crossing.**—It was proper for the court to charge with reference to the condition of the crossing, that if a careful driver could not drive over it in safety it was not such as the law requires.

6. **Charge as to Duty of Party Crossing.**—A charge approved that one approaching a crossing and not knowing of any facts as to its condition can presume it to be safe, when qualified by adding that it was his duty to make inquiry as to its condition before attempting to cross if he is in possession of facts that would require an ordinarily prudent man to inquire into its condition before going upon it.

7. **Reasonable Time for Restoring the Crossing.**—The railroad company and the contractor laying the track were allowed reasonable time to restore the crossing to a safe condition. What was reasonable time and whether the crossing was restored in reasonable time, were to be found by the jury from the circumstances.

8. **Liability of Contractor.**—A contractor building a railroad and undertaking to restore all public crossings is primarily liable to any one injured by his negligence, and is liable even to the railway company for any damages they may be compelled to pay by reason of want of care in restoring such crossings.

Appeal from Hunt. Tried below before Hon. W. C. Jones, Special District Judge.

*R. E. Cowart* and *W. C. Jones*, for appellants J. F. O'Connor & Co., contractors. — 1. The court erred in its charge "That it was the duty of the railway company, if the construction of its railway and laying its track injured the road or rendered the travel over it more difficult, to restore the dirt road to its former state or to such a state as not to necessarily impair its usefulness as a highway," which charge was error and not in accordance with the statute (art. 4170, Rev. Stats.), but directly in violation thereof. Rev. Stats., art. 4170; Wood on Railways, 970, 975; Patterson's Railway Accident Law, 155-6; People v. Chicago & Alton R. R. Co., 67 Ill., 118; Com. v. Erie, etc., R. R. Co., 27 Pa. St., 339.

2. The court erred in its instruction to the jury as to the degree of care required of appellee in crossing the track of said railway under the

circumstances and at the time he did so, as shown by the evidence of appellee, and he should have exercised a higher degree of care than ordinary care, and the court erred in not charging to that effect. The facts showed that appellee was guilty of contributory negligence and knew or ought to have known the condition of the crossing at the time he was injured. G. C. & S. F. Ry. v. Greenlee, 70 Texas, 553; T. & P. Ry. Co. v. Chapman, 57 Texas, 75; Thompson on Negligence, 426–7; Wood on Railways, 1302–1305; Patterson's Railway Accident Law, 158; Beach on Contributory Negligence, 257–259; Jacob v. Bangor, 16 Maine, 187; S. C., 33 Am. Dec., 652.

3. The court erred in exacting of defendants a higher degree of care than the statute requires, ignoring the fact that the duty to restore the highway to its former state is a statutory duty imposed upon the railroad company and can not be delegated by the railroad company to other parties, and in assuming that appellee was a careful driver and was driving a safe and gentle team. H. & G. N. R. R. Co. v. Meador, 50 Texas, 77; G. C. & S. F. R. R. Co. v. Flake, 1 App. C. C., sec. 254; Patterson's Railway Accident Law, 126–129; Wood on Railways, vol. 2, 1017; Cooley on Torts, —.

4. It is submitted that by the terms of the contract between the railroad and J. F. O'Connor & Co. the latter were not independent contractors but mere agents of the railway company. It was error for the court to omit to charge that J. F. O'Connor & Co. had under the contract a reasonable time within which to put the highway in a condition for public use and within which to establish temporary crossings. There is no testimony in the record that this road was recognized by the engineer of the Dallas & Greenville Railway Company as a public road or that it was the duty of appellant J. F. O'Connor & Co. to keep it open for use until permanent roads could be made. Sayles's Texas Civil Stats., art. 4170a, sec. 5, and art. 4170b; Thom. on Neg., 909 and 915; Wood on Rys., vol. 1, 1008 and 1011. On reasonable time, see Pat. Ry. Acc. Law, 156; P. S. Ry. v. Taylor, 104 Pa. St., 306; Paine v. G. T. Ry., 58 N. II., 611.

*Bryant & Dillard,* for Dallas & Greenville Railway Company, appellant. — The plaintiff at the time of crossing the railway early in the morning, having been put upon notice that the track laying force was approaching the public road and upon his return having noticed from the position of the track laying force that it had already passed the public crossing, was put upon his guard as to the unsafe condition of the crossing and he was guilty of contributory negligence in not making an examination before attempting the crossing. Bruker v. Covington, 69 Ind., 33; S. C., 35 Am. Rep., 202; City of Erie v. Magill, 101 Pa. St., 616; King v. Thompson, 87 Pa. St., 365; Parkhill v. Brighton, 61

Iowa, 101; City of Quincy v. Barker, 81 Ill., 300; Schaeffer v. City of Sandusky, 33 Ohio St., 246; S. C., 31 Am. Rep., 533.

The contract between the Dallas & Greenville Railway Company and J. F. O'Connor & Co. rendered J. F. O'Connor & Co. independent contractors. Cunningham v. Ry., 51 Texas, 503; Ry. v. Meador, 50 Texas, 77; Hughes v. Ry., 15 Am. & Eng. Ry. Cases and notes.

If plaintiff was entitled to recover from the Dallas & Greenville Railway Company then said company was in turn entitled to recover a like amount from J. F. O'Connor & Co. Water Co. v. Ware, 16 Wall, 566, and at p. 575, *et seq.*

*Perkins, Gilbert & Perkins,* for appellee, cited Davis v. Rousvelt, 53 Texas, 305; Loper v. Robinson, 54 Texas, 510; Ry. Co. v. Leak, 64 Texas, 654; Com. v. Erie R. R. Co., 27 Pa. St., 339; People v. C. & A. Ry. Co., 67 Ill., 118; Wood's Ry. Law, 2 vol., secs. 271, 971, 972; Roberts v. C. & N. Ry. Co., 35 Wis., 684; T. & P. Ry. Co. v. Wright, 62 Texas, 515; T. & P. Ry. Co. v. Chapman, 57 Texas, 81; Beaumont Pasture Co. v. Preston & Smith, 65 Texas, 448; Ry. Co. v. Greenlee, 70 Texas, 553; Ry. Co. v. Smith, 52 Texas, 178; Ry. Co. v. Waller, 56 Texas, 331; Ry. Co. v. Timmermann, 61 Texas, 663.

*R. E. Cowart, W. C. Jones,* and *Wm. P. Ellison* filed an argument for a rehearing.

Gaines, Associate Justice.—The facts which gave rise to this suit may be briefly stated as follows: On the thirteenth day of May, 1886, the Dallas & Greenville Railway Company entered into a contract with J. F. O'Connor & Company, its coappellants, for the construction of its line of railroad between the two cities designated by its corporate name. The contract bound O'Connor & Company to complete the road under the supervision of the chief engineer of the railway company for certain considerations therein expressed. O'Connor & Co. entered upon the work under their agreement, and on the twenty-fifth day of August, 1886, they laid the track across a public road known as the Dallas and Greenville road, at a point of intersection about one-quarter of a mile from the residence of appellee. At about eight o'clock on the morning of that day appellee with an empty wagon crossed the railroad at the point of intersection, going to a hay press in the neighborhood. At this time the track had not reached the crossing, but the track laying machine was being operated in laying the track a very short distance east of the point of intersection, and was seen by appellee. It was from twenty to sixty yards east of the crossing, according to appellee's testimony. At the intersection there was a cut about seven feet deep for the road bed, which was approached by steep inclines upon either side in order to fa-

cilitate the passage of persons and vehicles along the dirt road. Having gone to his point of destination and loaded his wagon appellee started home and reached the crossing between eleven and twelve o'clock in the day. He saw the track laying machine as he approached in operation about three hundred yards southwest of the place of intersection. Presuming, as he testified, that the track had been laid and the crossing put in order, after having caused his son who accompanied him to lock his wagon, he started down the incline without having first stopped to inspect the condition of the track. The ties and rails had been laid, but nothing had been done to restore the crossing except some planks laid between the rails and perhaps a plank outside the rails upon the end of the crossties. There was a ditch about a foot deep on each side of the roadbed intended as a water way or drain for the track. This condition of affairs appellee testifies he did not discover until it was impossible to stop his wagon. It was accordingly precipitated, one wheel upon the end of a crosstie and the other upon the rail, resulting in a jolt which threw him headforemost from his seat to the ground. His head struck upon a crosstie and he received serious injuries. He brought this suit to recover damages against both the railroad company and the contractors, and obtained a verdict and judgment against both. The railroad company in its pleadings asked that in the event a judgment was obtained against it, it have a judgment, over against the contractors for the amount, and received a judgment as prayed for.

The appellant company and J. F. O'Connor & Co. filed separate assignments of error.

The first assignment by O'Connor & Co., "that the court erred in refusing the special charge asked by appellants jointly," would be sufficiently specific if, as the assignment indicates, the appellants jointly asked but one charge. But the record shows that the instructions referred to contain four paragraphs each presenting a distinct proposition, and therefore the assignment is not in conformity to the rules and do not require consideration. For the same reason the second assignment of error by O'Connor & Co. is insufficient. The instructions asked by O'Connor & Co. separately embraced two distinct charges, and the assignment should have specified particularly which was complained of. The rule which prohibits this practice is uniformly upheld by this court and has been too frequently decided to require the citation of authority to support the ruling.

Before proceeding to the consideration of the next assignments which are predicated upon supposed errors in the charge of the court, we will say that in our opinion that charge taken as a whole presented very fully the issues made by the pleadings and evidence, and was in the main a very clear and accurate exposition of the law of the case as applicable to every phase of the testimony, and omitted nothing which made a special

instruction either necessary or proper. The assignments upon it, however, present some questions which are worthy of consideration.

The first and most serious question is presented by the second and third assignments of the appellant corporation and the third and fourth of O'Connor & Co. They are in the same language and complain that the court erred in using the word "necessarily" in the following paragraphs of the charge:

"2. The Dallas & Greenville Railway Company had the right to construct its road and lay its track across the Greenville and Dallas dirt road, but if said dirt road was a public road or highway it was the duty of the railway company, after its road was constructed and the track laid across the dirt road, if the construction of such railway and laying the track injured the road or rendered travel over it more difficult, to restore the dirt road to its former state or to such a state as not to necessarily impair its usefulness as a public highway.

"3. If the Dallas & Greenville Railway Company did construct its road and lay its track across the Greenville and Dallas dirt road, and if said road was a public road and the construction of the road and laying the track injured the usefulness of the dirt road, then the railway company was entitled to a reasonable time in which to restore the road to its former state or to such as would not necessarily impair the usefulness of the highway, and if plaintiff was hurt in attempting to cross the railroad before a reasonable time had elapsed for such restoration he would not be entitled to recover."

The language of the statute which prescribes the law upon this subject, so far as it relates to public roads, is as follows: "Such corporation shall have the right to construct across * * * any * * * highway, which the route of said railway shall intersect; but such corporation shall restore the * * * highway * * * thus intersected * * * to its former state or to such state as not unnecessarily to impair its usefulness," etc. Rev. Stats., art. 4170. The meaning of this is obvious. The Legislature evidently considered that the construction of a railroad across a public road would of necessity detract from its utility to some extent, and clearly meant to permit an impairment of the crossing to that extent only. So far as the impairment of the usefulness of the highway by the construction of the railway could be reasonably avoided it was not allowed. It is argued on behalf of appellee that the word "necessarily" as used in the charge means substantially the same as "unnecessarily," but we can not assent to this proposition. A positive and negative of the same term can not be synonymous. In support of the proposition that the two words are used interchangeably for the purpose of conveying the same idea we are cited to the case of M. K. & T. Ry. Co. v. Long, 27 Kan., 684, which quotes a statute of the State of Kansas, couched in substantially the same language as ours except that

the word "necessarily" instead of "unnecessarily" is employed. The case cited does not construe this term, and we do not undertake to say in what sense it was employed in the Kansas law, but our statute permits an impairment of the usefulness of the public road so far as such impairment could not be reasonably avoided. Therefore a charge which instructs the jury that it is the duty of a railroad company to restore a highway at a crossing to such a condition as not necessarily to impair its usefulness admits of the construction that if the utility of the highway be to any extent diminished, although a necessary result from the construction of the railway, the company has failed of its duty.

The charge if it affected a material issue in the case would have been misleading and a ground for a reversal of the judgment. But the question whether the state of the crossing at the time of the injury was such as unnecessarily to impair the use of the public road is not presented by the facts of this case. The evidence shows that at that time no steps had been taken to restore the crossing. The ditches were uncovered, the ends of the ties were protruding, and nothing had been done to relieve the jolt in crossing the rails except the laying down of a few loose planks. The crossing was restored at a later hour in the evening of the same day. But as it stood at the time the accident occurred the jury could have come to but one conclusion, and that is that the railroad in its condition at that time did unnecessarily impair the use of the dirt road. Whether the impairment of the usefulness of the public road was necessary or not was not a controverted question. The substantial issues of fact presented by the evidence were, first, had a reasonable time for the construction of the crossing elapsed when the injury occurred; and second, was the appellee guilty of contributory negligence? We conclude, therefore, that the charge though erroneous as an abstract proposition did not mislead the jury and is therefore no ground for reversing the judgment. In order to show the little importance that was attached at the time of the trial to the use of the word complained of in these charges, it is to be noted that in the first instruction asked jointly by defendants and refused by the court the same word is used in substantially the same connection.

It is also assigned by both appellants that "the court erred in the fourth paragraph of the charge in its instructions to the jury as to the degree of care required of appellee in crossing the track of said railway, under the circumstances and at the time he did so as shown by the evidence of appellee; and he should have exercised a higher degree of care than ordinary care, and the court erred in not charging to that effect."

The assignment is not well taken. The degree of prudence required of the defendant in approaching the crossing was ordinary care. Ordinary care must always be proportionate to the dangers that are to be encountered. The test is what would a man of ordinary prudence do under

the same circumstances. The paragraph of the charge complained of in this assignment was in accordance with this view of the law and very clearly presented the issue of contributory negligence.

The fifth paragraph is complained of upon the grounds that it uses the word "necessarily" in place of "unnecessarily," as in the charge pre-viously considred, and that it is upon the weight of the evidence. The first ground requires no further discussion. The instruction is as follows:

"Or if the road was so constructed at the crossing that an ordinarily careful and prudent driver could not safely drive an ordinarily safe team across the railroad without risk or danger, then if the contractors did not within a reasonable time restore the road to its former state or fix the crossing so as not to necessarily impair its usefulness, then both the rail-way company and the contractors would be responsible for injuries inflicted to a person hurt in attempting to cross such crossing if the hurt was occasioned by the defective construction thereof, unless such person should be deprived of his right to recover on account of his own contributory negligence."

It is insisted that this charge assumes "that the plaintiff was a careful and prudent driver and drove an ordinarily safe team." We do not so construe it. We understand it to instruct the jury in effect that if a careful driver with a safe team could not drive over the crossing in safety it was not such as the law requires. The charge correctly states the law and is not obnoxious to the objections made to it.

It is further complained that "the court erred in the sixth paragraph of its charge in charging the jury that a person traveling upon the pub-lic highway and approaching a crossing of such highway, who is ignorant of the defective condition of such crossing, and who does not know of such facts regarding the crossing as would put a prudent man on inquiry as to its condition, can legally presume that it is in safe condition."

This part of the charge, though abstractly correct, might be misleading, as applied to the facts of this case, if it stood alone. But it is immediately qualified by this language: "But if he knows the condition of the crossing, or is in possession of facts that would require an ordinarily prudent man to inquire into its condition before going upon it, then it would be his duty to make inquiry as to the condition of the crossing before going upon it." Taken together the instruction is not subject to objection.

It is also urged that the eighth paragraph of the charge was erroneous because it did not define contributory negligence. The charge had already defined contributory negligence abstractly, and the jury had been told under what circumstances the plaintiff should be deemed negligent in going upon the crossing, and it was not necessary to repeat the definition.

The tenth assignment of error of O'Connor & Co., that "the court

erred in overruling these defendant's motion for a new trial, " is too general to be considered. That, however, of the appellant company is specific and raises the question of the sufficiency of the evidence to support the verdict in two particulars. It is claimed, first, that the evidence showed that a reasonable time had not elapsed when the accident occurred for restoring the crossing. The testimony showed that the track had been laid some three hundred yards beyond the crossing when appellee attempted to pass. He testified that it could have been made good in fifteen or twenty minutes. This is not controverted by any witness, though one of the contractors subsequently testified on the trial. The statute requires that the crossing shall be restored, but of course the company was entitled to a reasonably sufficient time in order to do this. By this is meant such time as was necessary to accomplish the object without unreasonable expense. The public were entitled to the use of the highway, and the company had the right to disturb its enjoyment only so long as the construction of the road rendered such disturbance necessary. If any reason existed why this could not be done immediately after the track was laid, it could and should have been shown. The work was done within a few hours after the accident, and no fact is shown or reason assigned why it was not done immediately. We think the verdict of the jury supported by the evidence in this particular.

But it is also claimed that the evidence showed that appellee was guilty of contributory negligence. He passed the railroad at eight o'clock in the morning and saw its condition. The track laying machine was very near it. When he returned between three and four hours later he observed that the machine was laying the track some three hundred yards beyond it. He believed, as he testified, that the crossing could be restored in a few minutes. When he returned he might reasonably have inferred that the track had been laid for a time more than sufficient to permit the highway to be put in order. If it was his duty to presume that the parties who were constructing the road had failed in their duty, then he was negligent. On the other hand, in the absence of a knowledge of some fact indicating that there would be a failure in this respect, it would seem that he might properly have presumed the legal duty of the company had been performed. It was for the jury to determine under all the circumstances disclosed by the evidence whether or not he exercised due care in going upon the track without stopping to inspect it. Having found that issue in favor of the plaintiff under the facts in evidence as above detailed, we do not feel warranted in disturbing the verdict.

It is complained also that the verdict is excessive. The appellee was a healthy, vigorous man, about forty-five years old at the time of the accident, and accustomed to hard labor. By his fall he was stunned and his eye was injured. Some eighteen months had elapsed at the time of the

trial and he had not recovered. His sufferings had been great, his spine affected, and he had been unable to do any considerable amount of work. The physicians who were examined on the trial testified that his eye was permanently injured and that he would ultimately lose it; that this might affect the sight of his other eye, but not necessarily; that he was also suffering from an injury in his back, which was likely to have resulted from his fall; that three of his vertebræ were out of line, protruding as much as one-fourth of an inch too far, and that this injury was not curable but was likely to result in his becoming a hunchback and in paralysis. These witnesses also swore that the symptoms testified to by him indicated slight paralysis of his lower limbs, and that in their opinion he would never be able to labor and that hard work would be injurious and would likely prove fatal. A verdict for $6500 predicated upon uncontroverted evidence of this character does not evince that it was the result of passion or prejudice, and it can not be set aside upon appeal.

The court charged the jury that if they found a verdict for plaintiff against the railroad company, and found also that the injury resulted from the negligence of the contractors in failing to restore the crossing, then to find a verdict in favor of the railroad company against O'Connor & Co. O'Connor & Co. assign this charge as error. The written contract between the railroad company and the contractors was introduced in evidence. It contains this provision: "Public and private roads, recognized as such by the engineer, when crossed by the line of the road, must be kept open in condition for use until such permanent roads as may be directed by the engineer are formed and ready to receive the regular travel." It is submitted that there was no sufficient evidence that the road was public, or that the railroad company's engineer recognized it as such. A number of witnesses testified that it was a public road, among them a county commissioner, who said that the Commissioners Court was accustomed to apportion hands to work it. There was no evidence which throws the shadow of a doubt upon this question. Whether the engineer formally recognized it or not is immaterial.

The object of putting in the qualifying clause "recognized by the engineer as such" would seem to have been to enable the company by the act of its engineer to remove all doubt as to the duty of the contractors when a question of keeping open a road should arise between themselves. That the parties who constructed the railroad recognized the dirt road as public is shown by the fact of their cutting down the banks as approaches to the crossing; by their opening the construction train to let wagons pass on the day of the accident; and by the further fact that they made a good crossing after the accident on the same day it occurred. It was the duty of the contractors under their contract to keep this crossing in safe condition for public use, and if an injury resulted from their failure to do this, for which the railroad company was held responsible, they were

liable to the company to make good the loss. The court did not err in so charging. It was immaterial whether under the contract O'Connor & Co. were independent contractors or not. If not they were liable to the company for damages recovered of it by reason of their own negligence. Water Co. v. Ware, 16 Wall., 566. The injury having been caused by the negligence of the contractors they are primarily liable in any court, and the company employing them being compelled to pay the damages they become responsible to it for the amount. Wood on Master & Servant, sec. 325 and cases cited.

We find no error in the proceedings of the court below which requires a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*

Opinion November 30, 1888.