*Court of Common Pleas, Dauphin County, January 29th,* 1867.

### CITY OF HARRISBURG *v.* THE HARRISBURG PASSENGER RAILWAY COMPANY.

A city has general power over its streets and alleys to keep them in good order and to regulate their use for the benefit of the public. The legislature has the power to authorize the construction of a railroad over the streets of a city even against its will. In the absence of any statutory provision a railway company is bound to keep in repair that part of the streets of a city occupied by it, but the city cannot pass an ordinance compelling it to keep in order any more. If the track of a railroad company is out of order so that it cannot be crossed with safety it may be indicted.

A city may to a certain extent control and regulate the action of other corporations within its limits by ordinance; but it cannot prohibit a city passenger railway company, chartered by the legislature, from running its cars upon its streets for the non-compliance with the provisions of an ordinance.

BY THE COURT.—The city of Harrisburg has an undoubted general power over the public streets, lanes, and alleys therein, to prevent all obstructions or nuisances, and to regulate the occupancy and use thereof for the benefit of the people. It is also bound by the terms of its charter to keep them in good order. The streets are public highways, either by dedication or special grant, and stand in precisely the same situation whether the right commence in the one way or the other; in either case they are highways for the use of the people at large, over which the State has undoubted authority by right of eminent domain. They are subject to the corporate regulations for the purpose of grading, curbing, paving, and drainage; but may be controlled by the paramount power of the legislature in their use by carriages, railcars, or any other means of locomotion. A city has but a qualified property in its streets, and holds them as a public trustee, not for the citizens only, but for all the inhabitants of the commonwealth. The legislature may, therefore, modify, abridge, or enlarge their use, or permit their enjoyment for other public purposes of travel, without the consent and even against the will of the municipal corporation (6 Wharton, 44, 45; 2 Watts, 23). The power of the legislature to construct a railroad over such a public street is indubitable, and the authority which the State possesses may be conferred upon others when believed to be beneficial to the people (12 Casey, 99). No corporation or individual would have the right to build such a road in a city unless empowered by an act of Assembly, but the assent of the municipality is not a prerequisite. It may be done without its consent and against its will. The legislature of the State, without the expressed assent of the city of Harrisburg, incorporated a company, in the year 1861, to make a passenger railroad over certain streets in the act designated. No provision is made in the statute as to who shall keep the track of the road in

order. The city, by its charter, was required to keep its streets in a good state of repair, which general duty would include those named in the law, as well as others. But the act of 1861 gave the virtual use of a portion of each of those streets to the railroad company. True, the public have certain limited rights on the track of the road. It is required to be made at grade with the street, and therefore may be passed over at pleasure. Many vehicles travel upon its rails, but must give way at all times and under all circumstances to the cars of the company, which has measurably an exclusive enjoyment of so much of the public street. Who then must keep that portion of the street so occupied in repair in the absence of all statutory provision? As we conceive, it must be done by the railroad company. From the very nature of the enjoyment, the duty devolves upon it. The legislature has taken the control of that portion of the highway from the city authorities and given it to another corporation, to be used in a method peculiar to itself. All of the streets not so occupied must be kept in repair by the city. If the track of the railroad becomes so deep and ponderous that it cannot be crossed with safety, the company may be indicted. If injury occurs to persons or property in consequence of its neglect of duty, the company must pay the damage. The State having taken that part of the street from the city, I am of the opinion that it is in nowise responsible for any consequential injury to the public or individuals. There is ample means of redress to either by the common law. To the public by indictment, to individuals by action. A city ordinance is, therefore, of little moment, but it may be tolerated and supported on account of the public crossings, which the city must see are kept in proper order. There is probably ample room for the people to travel on each side of the railroad; they are, therefore, provided with a suitable thoroughfare by the municipal authorities. But every crossing street must be kept in repair by the city, on the railroad track as well as elsewhere. Not because it is required to work on the track of the road, but on account of the other public thoroughfare, the cross street. As the city has a direct interest in the wellbeing of the track, and at such points may be obliged to keep it up, the council may, with propriety, take the necessary measures to compel the other corporation within the city limits to perform its duty. The burden of repairing the streets at large cannot be shifted from the municipality to the railroad, for, as we have already said, the company is bound to keep its track in repair at all places. This we conceive it may do by ordinance, as it is clearly laid down that the city is the superior corporation and may control and regulate the action of other corporations within its limits, as well as that of individuals. Such is the principle of the Broad Street Passenger Railway case, decided last June by the Supreme Court. And we

have an example of such an ordinance supported in Northern Liberties *v.* The Gas Company (2 Jones, 318). Many other authorities might be cited to the same effect. We are, therefore, of the opinion that the councils of Harrisburg might enact an ordinance to oblige the railroad company to keep the track of its road in good order within the limits of the city.

The next question is, can this ordinance be enforced? We think it unobjectionable for one of the reasons urged against its validity,—that it is retroactive in its operation. Although made after the track was laid, yet it only requires the company to perform its duty. It does not punish the company for having the road track in bad condition prior to the enactment, but for acts done in future. No penalty could be imposed for past delinquencies, nor is it attempted.

There is, however, one objection to this ordinance which we deem fatal. It requires the company to keep its track in order for the distance of eighteen inches on the outside, on each side thereof, whilst the special verdict concedes that the company occupies the ground for only nine inches on each side beyond the track. The company can doubtless be required to keep that portion of the street in order which it occupies, even to the outer end of its cross-ties on which the rail rests, but no further. This ordinance obliges it to do more, and attempts to throw upon the company a portion of the duty resting by law on the city. For this excess the ordinance is void, and as the acts provided against are not under the ordinance susceptible of division, and the order is an entirety, no part of the penalty can be enforced. It is laid down by several of the best writers that if a by-law or ordinance be *entire*, so that the part which is void influences the whole, the entire by-law is void (Angell & Ames on Corp. s. 358; Wilcox on Municipal Corporations, ss. 384, 385, 386, 387, 388).

There are other parts of this ordinance which are fatally ruinous if attempted to be enforced, but having no effect in the present case are harmless. It is not in the power of the city, by ordinance or by law, to stop the running of the cars on account of the non-payment of the penalty; they are authorized to run for the convenience of the public, and cannot be prevented by municipal enactment; there is no authority to pass such a by-law or ordinance. The best writers say that corporations can only impose *penalties* for a breach of ordinance, which in general should be *specific*, but may be limited between certain sums, but cannot imprison for a violation, still less can they operate in the nature of injunction or impose a forfeiture (Ang. & Am. on Corp. s. 360; Grant on Corporations, 84, 85, 86, 370, 371).

The second section of the ordinance is entirely unnecessary, as it can neither enlarge the authority of the city or its workmen, or

[Woodside & Storeger v. The Pennsylvania Railroad Company.]

abridge that of the railroad company. The city authorities have all the power therein conferred without the ordinance.

For the reasons given, we render judgment in favor of the defendant on the special verdict, for the excess of duty imposed on the company, by requiring it to keep more of the street in repair than is occupied by its road.

NOTE.—There are some portions of this opinion which may need modification. It is quite probable that the city corporation could be held responsible to individuals injured by reason of the railroad track being out of repair; but if made pay damages, it would have remedy even against the railroad company. Possibly the city authorities might be indictable for a neglect of duty in suffering the street to become deep, or ponderous, or a public nuisance, but the city might put the criminal law in motion against the company. The possibility of such action or indictment will go far towards justifying the enactment of the ordinance, so as to avoid the responsibility.