## Sanford *v.* Union Passenger Railway Company.

*Negligence—Street railways—Repair of streets.*

Where a street railway company's obligation to a city is " to keep and maintain in good order at all times," under the direction of the city officials, the streets which in the judgment of the said officials are in need of repair, the liability of the railway company to persons injured by defects in the street is no higher or greater than that which the law imposes upon the municipality itself.

The duty of the municipality is to keep its streets in safe condition at all times, but its liability to persons injured on account of the neglect or omission of this duty is always conditional upon, first, a positive misfeasance in doing acts which cause the street to be out of repair, in which case no other notice to the corporation of the condition of the street is essential to its liability, (because the municipality has all the knowledge of the facts which a notice would give) or, second, the neglect of the corporation to put the streets in repair, or remove obstructions therefrom, or remedy causes of danger occasioned by wrongful acts of third parties, in which cases notice of the condition of the streets, or what is equivalent to notice, is necessary.

In an action against a street railway company to recover damages for the death of a horse, it appeared that the railway company had obligated itself to keep and maintain the streets which it occupied in good order at all times after notice of defects from the city. At the time of the accident plaintiff was driving a horse and wagon along the tracks of the defendant company, the horse walking between the rails and the wheels of the wagon being upon them. While proceeding in this way the horse suddenly walked into a hole which was about one square foot in surface measurement, and about four feet in depth, and sank to the belly, which caused its death. It did not appear what was the cause of the founderous condition of the street, nor was it clearly shown that there was a hole there previous to the accident, or that the horse was not precipitated into the ground by the unexpected cave in of the street at that point; nor whether it was the result of an inevitable accident, or caused by some default of the city or railway

company. It did appear that the defect was first noticed at the time the accident happened to the plaintiff, and that its existence was not known the previous evening when plaintiff had used the street. *Held,* that a compulsory nonsuit was properly entered.

Argued Dec. 14, 1900. Appeal, No. 230, Oct. T., 1900, by plaintiff, from order of C. P. No. 1, Phila. Co., Sept. T., 1899, No. 431, refusing to take off nonsuit in case of James Sanford v. The Union Passenger Railway Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Trespass to recover damages for the loss of a horse. Before BRÉGY, J.

At the trial it appeared that on August 4, 1898, plaintiff's horse was killed as the result of falling into a hole in a street between defendant's tracks. The circumstances of the accident, and the contractual relations between the defendant and the city of Philadelphia as to the repair of streets, are fully set forth in the opinion of the Superior Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was the order of the court.

*William H. Peace*, with him *H. H. Sinnamon*, for appellant. —A corporation bound in consideration of the franchise to keep a road or bridge in repair, is liable for injury to a person from want of repair, whether the defect be latent or patent, unless he be in default, or the defect was from inevitable accident, etc., or the wrongful act of a third person of which they had no notice or knowledge, and this although ordinary care was used in the erection or repair, and the work was done by competent workmen under contract: Graham v. Pennsylvania & Ohio Canal Co., 63 Pa. 290; Philadelphia v. Ridge Ave. Pass. Ry. Co., 143 Pa. 444; Erie City v. Schwingle, 22 Pa. 384; Philadelphia v. Spring Garden Farmers' Market Co., 161 Pa. 522.

*Thomas Leaming*, with him *Dallas Sanders*, for appellee, cited: Philadelphia v. Ridge Ave. Pass. Ry. Co., 143 Pa. 444; Philadelphia v. Thirteenth & Fifteenth Sts. Pass. Ry. Co., 169 Pa.

269; Philadelphia v. Hestonville, etc., Pass. Ry. Co., 177 Pa. 371; Philadelphia v. Philadelphia City Pass. Ry. Co., 177 Pa. 379.

OPINION BY ORLADY, J., February 14, 1901:

The plaintiff was driving a horse and wagon, about half past four o'clock in the morning, on a public street which was paved with belgian blocks and occupied by a single track street railway operated by the defendant company. While his horse was walking between the rails, and the wheels of the wagon were upon them, the horse suddenly walked into a hole (about one square foot in surface measurement and about four feet in depth) in the street, and sank to the belly, sustaining injuries which caused its death the same day. From the plaintiff's statement at the trial, it did not appear what was the cause of the founderous condition of the street; nor was it clearly shown that there was a hole there previous to the accident, or that the horse was not precipitated into the ground by the unexpected cave in of the street at that point; nor whether it was the result of an inevitable accident, or caused by some default of the city or railway company. It did appear that the defect was first noticed at the time the accident happened to the plaintiff, and that its existence was not known the previous evening, when the plaintiff had used the street and adjoining residents had observed it. A compulsory nonsuit was entered, which the court refused to take off and the plaintiff brings this appeal.

The authority of the defendant company to occupy the highway with its railway, and its duty thereunder, were fixed by its charter and certain ordinances of the city, taken in connection with a contract which the defendant made with the city pursuant to an ordinance of 1893.

The plaintiff contends that under these ordinances and contract, (1) it was the duty of the defendant to keep and maintain this street "in good order at all times;" (2) that the existence of the hole unexplained, is presumptive evidence of a want of proper paving, or a state of nonrepair, for which the defendant is responsible, unless by the plaintiff's own showing it was caused by an inevitable accident or the wrongful act of a third party of which the defendant had no knowledge or notice.

The charter of the company provides that it "shall be at the entire cost and expense of paving, repaving and repairing that may be necessary upon any street where the track of said company may be laid," and shall be subject to the ordinances of the city, regulating the running of passenger railway cars. The ordinances of the city define its duty in this behalf and impose certain stipulations which became important in this case. By ordinance of July 7, 1857, the time of performance of the duty is fixed, " when requested to do so by the chief commissioner of highways, . . . . and should they refuse or neglect to do so for ten days from the date of such notice, then and in such case the councils may forbid the running of any car or cars upon the said road until the same is fully complied with, and the city reserves the right in all such cases to repair or repave such street, and the expense thereof shall be a judgment upon the road, stock and effects of such company," etc.

An ordinance of April 1, 1859, provides that after notice has been given by the commissioner of highways to repave or repair, " the said paving and repairing shall be done according to the grade now established, or that may be hereafter established by law, and shall replace the grade of said street so far as the same may be altered by said company, and shall repave any street used by said company as aforesaid, within the time fixed by the chief commissioner of highways in said notice, . . . . and if said company shall fail to comply with the provisions of this section according to the terms of the notice served upon it, the chief commissioner of highways shall pave, repave and repair said streets, the cost of which shall be collected of and from said company by the city of Philadelphia."

The ordinance of March 30, 1893, provides that before permits shall be issued to proceed with the work of constructing the railway and trolley system of the defendant company, . . . . . it shall enter into an agreement or contract with the mayor on behalf of the city, " that the said railway company shall agree to keep and maintain in good order at all times, whether paved, macadamized, or improved, all streets, avenues, or roads traversed by its lines of railway or its trolley system, . . . . that the company shall, under the supervision of the department of public works, repave in good, substantial and workmanlike manner with belgian blocks or other improved pavement, as directed

by ordinance of councils, or by the department of public works, and to be done in a manner to be prescribed by and to the satisfaction of the said department, all streets, etc. . . . Such repaving shall be commenced upon each of said streets, . . . . and shall be pushed and completed with all reasonable and proper diligence, . . . . if not thus pushed, the director of the department of public works may enter upon the streets and complete the same, at the expense and cost of the said railway, trolley or other electric motive power company."

The agreement or contract mentioned in this ordinance was duly entered into by the defendant and the city, and on the trial it was agreed that pursuant to the charter, ordinances, and the contract, the parties thereto established and recognized a system by which (when repairs were deemed necessary by the department of highways) the city gave to the street railway company written notices to repair streets, which designated the location and character of the defect in the street; and further that no notice was given to the defendant to repair the street at the place where the plaintiff's horse was injured. The street railways of Philadelphia occupy nearly 500 miles of the streets of that city.

The manifest intention of the ordinances and contract with the defendant company was to transfer to the company that portion of the public duty which relates to keeping in repair all of the street which lies between the curbs. This duty the company assumed and does not question its liability to do so under the terms of its contract. While there is no controversy on this phase of the matter, it is as clearly shown by the ordinances and contract, all of which are to be considered in determining the defendant's liability in this case, that there was reserved to the city a clear right of deciding on the character and sufficiency of the repairs to be made, as well as the necessity for such repairs.

To repair a street within the meaning of the contract means to restore it to sound or safe condition after injury or partial destruction, and this without a change of grade or character of the paving materials. To facilitate the work of paving, repaving and repairing, and to have all such work conform to the plans prescribed by the department of public works, it was distinctly provided that they are to be made " within the time fixed

by the chief commissioner of highways in said notice," and that the work of repaving is to be done " under the supervision of the department of public works . . . . as directed by ordinance of councils or by the director of the department of public works, and is to be done in a manner prescribed by, and to the satisfaction of, the said department," and that if not pushed and completed with all reasonable and proper diligence, the proper department may enter upon the streets and complete the work." " The cost of which shall be collected of and from said company by the city of Philadelphia."

Under these ordinances and the contract, it cannot be seriously urged that the exclusive duty of maintaining the public highways of the city in safe condition had been transferred to the defendant company which traversed the streets, without any limitations. As was stated in Philadelphia v. Ridge Avenue Pass. Ry. Co., 143 Pa. 444, " By whom is the necessity for repairing or repaving, etc., to be determined? Certainly not by the company itself, but by the municipal authorities. As a general rule it is their special province to determine when paving is needed, and how it shall be done, whether with the same kind of material as before, or with a different and better material. It was never intended to transfer the duty of determining these matters, or either of them from the municipal authorities to any one else." Nor was it intended that there should be any conflict of judgment as to these important questions. Would it be seriously urged that the railway company would be liable in damages for injuries caused by an open ditch in the highway which had been made by the city's employees? Yet this might be a negligent defect in the highway.

The duty of maintaining the streets in a safe condition for public travel and use rests primarily, as respects the public, upon the municipality, and the obligation to discharge this duty cannot be evaded, suspended, or cast upon others by any act of its own. A municipal corporation is not an insurer against accidents upon the streets and sidewalks, nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient, if the streets are in a reasonably safe condition for travel in the ordinary modes, by night as well as by day; whether they are so or not is a practical question, to be de-

termined in each case by its particular circumstances: 2 Dillon on Mun. Corps. sec. 1019.

It was held in Erie City v. Schwingle, 22 Pa. 284, " Every highway or thoroughfare, which the public has a right to use, must be kept by somebody, in such order that it can be safely used, and if any serious injury happens to an individual in consequence of its bad condition, those who are bound to repair must answer in damages. . . . A party bound to repair, whether it be an individual, a private corporation, a township, district or city, must perform its duty or pay for all injuries to persons and property, which may be caused by the omission." This rule of liability was announced in an action against the municipality, because it tacitly invited the plaintiff into a street not closed off by the city authorities, although in a dangerous condition because of recent repairs, and passable only by skilful driving and good luck: Bauerle v. Philadelphia, 184 Pa. 545.

The duty of the municipality is to keep its streets in safe condition at all times, but its liability to persons injured on account of the neglect or omission of this duty is always conditional upon, first, a positive misfeasance in doing acts which cause the street to be out of repair, in which case no other notice to the corporation of the street is essential to its liability (because the municipality has all the knowledge of the facts which a notice would give), or, second, the neglect of the corporation to put the streets in repair or remove obstructions therefrom, or remedy causes of danger occasioned by wrongful acts of third parties, in which cases notice of the condition of the streets, or what is equivalent to notice, is necessary : 2 Dillon on Mun. Corps. sec. 1020.

The municipality cannot by a contract impose any higher or greater liability on its licensee than the law imposes upon the municipality; and the clause in the contract, providing, " that the railway company shall keep and maintain the streets in good order at all times," would not make this defendant liable in a case where the city would not be liable, provided the duty created by law had been performed by the city in accordance with the requirements of the law. The contract with the railway company was in the nature of an indemnity after a liability was fixed by a proper notice and proper repairs made by the city by due course of law. The company's obligation is " to

keep and maintain in good order at all times," under the direction of the city officials, the streets which in the judgment of the said officials are in need of repairs, and it " is liable to the city for the cost of the repairs properly made, to such style of pavement as may have been upon the street, when the notice to repair was given : " Philadelphia v. Hestonville, etc., Pass. Ry. Co., 177 Pa. 371.

To hold the defendant liable under the facts of this case would be to make it an insurer of the safe condition of the streets at all times, which the city is not.    The city and the street railway company may be joint tort feasors, or either may be primarily or ultimately liable in damages for injuries received on defective streets, according to the circumstances of the case ; but to hold the defendant liable in this case would be to exact of it the performance of a duty under conditions which would not make the city liable.    To entitle the plaintiff to recover against either, he must show actual or constructive notice of the defect and a failure to exercise reasonable care and diligence to remedy it.

The nonsuit was properly entered by the court below and the judgment is affirmed.