Opinion by
Head, J.,
As the case was submitted the verdict of the jury establishes the facts that the accident which resulted in the loss of the plaintiff’s horse was caused by a defect in the portion of one of the city streets occupied by the right of way of the defendant company, viz.: between the two rails of the car track; that such defect had been permitted to exist for several weeks, and that defendant had therefore at least constructive notice of it; that the accident was not due in any degree to contributory negligence on the part of the plaintiff; and that the value of the horse that was lost was $350. Later on the learned court below entered judgment for the defendant non obstante veredicto. The ground on which the judgment was rested, as indicated by the opinion filed, may be thus briefly stated: There was no duty imposed by law on the defendant company to keep in proper repair the portion of the street between the rails of its track, unless such obligation has been expressed either in the charter of the company, or in one or more of the ordinances of the city, granting municipal consent to the entry by the company on its streets and the operation of its cars thereon. ■ An examination of the charter discloses no such duty was imposed on the corporation by the legislature under the creative act, and the ordinances of the city, offered in evidence, exhibited *491 an obligation to make such repairs only after Dotiee from the city authorities that they were required. No such notice having been given, no duty to repair existed, and the failure to make such repairs could not therefore be, in the eyes of the law, a negligent act on the part of the company.
The position taken by the learned counsel for the plaintiff and urged upon the court below and upon us strikes directly at the cornerstone upon which the entire opposing theory rests. They begin with the fundamental proposition that when the defendant company, by virtue of its charter powers and the consent of the city, entered upon the streets of the latter and constructed its tracks thereon, there resulted a common-law duty and obligation on the company to keep in proper repair the portion of the street covered by its right of way so that it, like all other sections of the street, might be traversed with reasonable safety by the public so long as such use did not obstruct or impede the movement of the company’s cars. If this proposition be sound, manifestly the learned court below fell into error in reaching a conclusion that the failure of the company, after due notice, to make such repairs was not a breach of any legal duty.
If we were at liberty to regard the question as an open one, a wide field of interesting research and discussion would lie before us. A brief examination, however, of two recent decisions by the Supreme Court must lead to the conclusion, in our opinion, that this fundamental question has been settled so thoroughly that it cannot be successfully assailed in this court.
In Reading v. United Traction Co., 202 Pa. 571, the city sought to recover from the traction company, inter alia, the cost of repairing portions of certain streets within the right of way of the defendant company. In the court below the entire subject of the liability of such companies to make such repairs was gone over by the learned trial judge, Endlich, J., in a learned and exhaustive opinion. After briefly showing that a number of cases cited were *492 truly applicable only to conditions not existing under the facts in evidence before him, the learned judge proceeds, in the following language, to trace the origin of the liability of such a company to make repairs and to cite the numerous authorities in support of the doctrine stated: “When, looking beyond the decisions referred to, we search for principles to guide us to a conclusion, we find first of all that it is recognized, with substantial unanimity, that a railway company, whether general or passenger, is bound to keep the portions of streets occupied by its right of way in good condition, even in the absence of any express contract or statutory direction to that effect: 2 Wood, Railroads, 758, 760; Pierce, Railroads, 245; Mills, Em. Dom., sec. 198; Elliott, Roads and Streets, 591; Worster v. R. R. Co., 50 N. Y. 203; North Hudson County Ry. Co. v. Hoboken, 41 N. J. L. 71; Ry. Co. v. State, 87 Tenn. 746. As illustrating the acceptance of this principle in Pennsylvania, it is only needful to refer to Phœnixville v. Iron Co., 45 Pa. 135; Penna. R. R. Co. v. Irwin Boro., 85 Pa. 336, and Harrisburg v. Pass. Ry. Co., 1 Pears. 298.”
After a careful examination of a number of objections advanced to the soundness of the principle enunciated, the learned judge thus states the results of his examination of the general question under consideration: “It thus seems to be clear (1) that a railway company occupying streets in a city is, at common law, hable to repair the space covered by its right of way thereon, when out of repair, in a manner corresponding with the pavement of the rest of the street, etc.” A judgment in favor of the city and against the traction company for the cost of the repairs made by the city followed. The Supreme Court affirmed the judgment in a per curiam opinion of a line, contenting itself with the significant statement, “The judgment in this case is affirmed on the opinion of Judge Endlich.”
If upon an examination of that case alone there might be left room for the argument that the judgment in that *493 particular case could safely rest upon certain facts peculiar to it, and did not necessarily involve an adoption by the Supreme Court of the principles so clearly stated by Judge Endlich in the language already quoted, the next utterance of the court on the same subject has removed the last vestige of hope of successfully controverting the soundness of those principles. In a later case between the same parties, Reading v. Union Traction Co., 215 Pa. 250, the Supreme court itself expounds, in unmistakable language, the position it had intended to take in the earlier case. The controversy between the parties is thus stated: “As to the remaining portion of the city's claim— $8,292.48 — which the jury found it had expended in making necessary repairs on those portions of the streets between the rails, the appellant contends that there ought not to have been a recovery., for the reason that its duty as to the space between the rails is fixed by the charters and ordinances under which its tracks were laid on the streets, and as it is not expressly required by them to repair between the rails, it is not hable for the amount expended by the city in doing so.” As we understand the contention of the defendant here, it could not be more fairly stated than in the language just quoted. Considering this contention, Mr. Justice Brown continues: “Before the adoption of our present constitution street railway companies were authorized to occupy streets without municipal consent; now they can be authorized to do so only with such consent; but, no matter how authorized, the authority under which streets are occupied, unless expressly relieving such companies from the duty of keeping in repair those portions of the streets occupied by their track, carries with it a liability on their part to do so.” After pointing out the reasons why the responsibility to make such repairs should and did follow the authority to enter upon and use a portion of the public streets, the opinion thus concludes: “We do not deem it needful to say more about this case. It is clearly ruled by the general principles announced in Reading v. United Traction Co., *494 202 Pa. 571, as is demonstrated in the opinion of the court overruling the motion for a new trial. In that case, in affirming the judgment below, we adopted, as correctly expressive of our views, the words of the present learned trial judge, that Tt is recognized, with substantial unanimity, that a railway company, whether general or passenger, is bound to keep the portions of the streets occupied by its right of way in good condition, even in the absence of any express contract or statutory direction to that effect.’” Here follows a citation of the authorities noted in the opinion of Judge Endlich, already quoted. Additional cases in other jurisdictions may be easily found: Nellis on Street Surface Railroads, p. 259; Montgomery Street Ry. Co. v. Smith (Supreme Court, Ala.), reported in 4 Street Ry. Rep. 1, and the elaborate note accompanying the report.
Was the liability, thus by the common law imposed on the defendant company, removed by the statute which authorized its incorporation? Clearly not. The lan-. guage of its very first section indicates that it was in the legislative mind that if thereafter municipalities were to ordain regulations on the subject, they would not be in relief of the common-law liability to make necessary repairs, but would be such regulations, in addition thereto, as would be reasonably necessary for the protection of public travel on the streets occupied by the tracks of the railway company. The power thus to regulate was broad and general without other definite limits than that the regulations adopted be reasonable for the protection of public travel along the streets. Nor are we persuaded that by any proper construction of the language of the several ordinances of the city of Philadelphia in evidence, the conclusion can be reached that it was the intention of the city to relieve the defendant from the duty to make repairs that would otherwise rest upon it. Indeed, we are led to believe, from an examination of them, that in so far as they were not intended to be merely declaratory of the liability then existing, they were intended to add to *495 rather than take from it. It is true, some of them provide expressly for a specific notice, under certain conditions, by the highway commissioner, and in case of a refusal to obey, then for summary action on the part of the city which, in some of the ordinances, takes the form of rather severe penalties. In such cases the ordinances, as we view them, contemplate an existing default on the part of the companies and then provide that unless upon notice the neglected duty be promptly performed, punitive measures will follow.
Without further elaboration then, we are of opinion that it has been authoritatively determined that the defendant company, by reason of its entry upon the streets of the city, was bound to assume the duty of keeping that portion of the streets within the lines of its track in reasonable and proper repair; that it has not been relieved of that responsibility, either by the statute authorizing its creation or the ordinances of the city; that it was consequently a breach of its legal obligation when, after due notice, it failed to repair defects there existing and dangerous to public travel, and that the plaintiff, having shown an injury of which this negligent act was the proximate cause, had established his right to recover the damages which would compensate his loss. The learned court below therefore fell into error in entering judgment for the defendant non obstante veredicto. The record before us does not demand or invite any consideration of the rights of the plaintiff or the liability of the city had he chosen to bring his action against the municipality. Nor does our case resemble, on its facts, Sanford v. Ry. Co., 16 Pa. Superior Ct. 393, where the evidence failed to disclose the existence of any defect in the street before the accident, and there was no notice, actual or constructive, to either city or defendant railway company.
The judgment is reversed and the record is remitted to the court below with direction to enter judgment on the verdict in favor of the plaintiff unless legal or equitable reason to the contrary be shown.