## Phœnixville *versus* The Phœnix Iron Company.

*Person crossing public road with a mill-race, liability of, to construct and repair bridges.—Liability of corporation to repair public bridge used by them under an Act of Assembly.*

1. An owner of a mill, who digs a race to it across a public way and builds a bridge, used as a public bridge, is bound to repair: but his obligation is proportioned to the public rights of way then existing, and is not increased if the public subsequently acquire greater rights therein.

2. Therefore, where a race was dug across a public way and a bridge built by the millowners, which (after a public road had, by order of court, been laid out beside the old one, but of greater width), was destroyed, and a new one built by the town supervisors larger and wider; in an action by the town against the vendees of the former millowners, for money expended in keeping the bridge in repair, the jury were instructed that if the new road was the same as the road which was there when the race was cut, the defendants were bound to keep the bridge in repair: but if the road was materially different from the old one at the race-crossing, not on the same ground or widened, so that a different bridge was required to accommodate the new and different rights of the public, they were not bound to construct the bridge or keep it in repair; such instruction was not error.

3. Where the millowners, an incorporated company, had, by Act of Assembly, permission to lay a railroad track upon a county bridge over a creek, within the borough, provided they should construct a convenient and substantial footway over said creek, they were held bound to maintain it and liable also to the borough for money expended in repairing it.

ERROR to the Common Pleas of *Chester county*.

This was an action of *assumpsit*, brought by the Burgess and Town Council of the Borough of Phœnixville against the Phœnix Iron Company, to recover the amount expended by the plaintiffs in repairing a bridge over the mill-race of the defendants, and a foot-bridge over French creek, in the borough of Phœnixville.

The material facts of the case were these:—In the year 1837 there was a public road laid out by order of the court, extending from Buckwalter's ferry, on the Schuylkill river, north of Phœnixville, to a point near to Longstreth's mill, which stood a short distance from the bridge in question, over the race. At the termination of this road another road started and ended in a road called the Nutt road, which passes south of Phœnixville. This latter road was not laid out by the court, or other legal authority, but was travelled by the public, and kept in repair by the supervisors of the township of Schuylkill, of which Phœnixville was then a part. Reeves & Whittaker, who were then engaged in the iron business in Phœnixville, and owned the ground over which the road last mentioned passed, cut a race, or canal across this road to convey the water from their dam to their mill.

At the same time they erected a bridge over the race, partly on the bed of the road. In the fall of 1837, after the bridge was completed, a public road was laid out, by order of the court, from the south side of Phœnixville to the north side, "partly

along the old road or street crossing over the factory and saw-mill race, French creek, and the new rolling-mill race," to the road leading towards Buckwalter's ferry. This road, which was confirmed November 10th 1837, was thirty-three feet wide, and passed over the race bridge. In 1839 the bridge was swept away, but was soon after replaced by one built by the supervisors of the township of Schuylkill, on the same foundations, but which was somewhat higher and wider.

It was subsequently raised by the supervisors. In 1849 Phœnixville became an incorporated borough, when the road laid out in 1837 became a street, and was graded by the borough authorities. This proceeding, together with the passage of a law authorizing the defendants to construct a railroad in the borough, rendered it necessary to raise the bridge seven and a half feet, which was done at the joint expense of plaintiff and defendants.

By an act authorizing the construction of this railroad, defendants were empowered to construct and lay down a railroad from the Philadelphia and Reading Railroad south of and near the Phœnixville depot, along certain streets of the borough, "thence along the north side of Mill street, and across French creek bridge on Main street; and thence to the rolling-mills and furnaces of Reeves, Buck & Co." It also "authorized and empowered them to place cars and horses upon the said railroad, and to haul and transport upon and over the same all kinds of goods, wares, and merchandise; and to possess, occupy, and use the said railroad, to all intents and purposes, as their own private property : Provided, nevertheless, that so soon as the said railroad is laid upon the aforesaid bridge, across French creek." *

* * It also provided that "the said firm of Reeves, Buck & Co. (who then constituted the Phœnixville Iron Company) shall construct a convenient and substantial footway over the said creek, to be attached to the said bridge, on the west side of the same, four and a half feet wide, to commence opposite the machine-shop of the said firm, and to extend three hundred and two feet in length, and that the said firm of Reeves, Buck & Co. shall also raise the bridge across the canal belonging to the said firm, opposite the said bridge across French creek seven and a half feet high," &c.

The defendants constructed their railroad, as contemplated by the act, crossing by a curve over the French creek bridge, passing so near the western guard-wall as to require part of it to be taken down, or made thinner, and they also constructed a footway on the west side of the bridge, as provided by the act.

The rolling-mills, race, and railroad are now owned by defendants.

In 1860, both the bridge over the race and the foot-bridge being out of repair, plaintiffs requested defendants to repair them,

and, upon their refusal, the plaintiffs caused both bridges to be repaired, and brought this suit to recover the amount expended.

The court below instructed the jury, that if they " found the road at the point in question had been changed as to location, or width, and a different bridge been erected by the township, or others, to accommodate this changed condition of the road, then their verdict should be for the defendants ; and

" In regard to the claim made for money expended in repairing the footway alongside of the county bridge over French creek, the court instructed the jury that the plaintiffs cannot recover.''

Which instruction was assigned for error by the plaintiffs, after a verdict and judgment in favour of the defendants.

*William Darlington,* for plaintiffs, as to the race-bridge, cited and relied on Woodring *v.* Forks Township, 4 Casey 355 ; Ammerman *v.* Wyoming Canal Company, 4 Wright 256 ; and 2 East Rep. 354.

As to the liability of defendants to repair the foot-bridge he cited the cases in 4 Casey 355; 13 East 220; 14 Id. 317; 14 Wend. 58, and 23 Id. 449.

*Joseph J. Lewis,* for defendants, as to the race-bridge, relied on Purley *v.* Chandler, 6 Mass. 458; Rex *v.* Kent, 2 M. & S. 518; Regina *v.* Wells, 1 Salk. 359 ; Rex *v.* West Riding of York, 5 Burr. 2594 ; 2 W. Blackstone's Rep. 7 ; 2 East 342, 346, and note ; Rex *v.* Surrey, 4 Camp. 455 ; Dygert *v.* Schenk, 23 Wend. 448 ; Bedford Turnpike Company *v.* Franklin Company, 6 S. & R. 234.

As to the foot-bridge, he contended that as it was built for the accommodation of the public, and as there was no obligation to repair imposed on the defendants by the legislature, the duty of repairing was on the public : citing Meadville *v.* Erie Canal Company, 6 Harris 66 ; 1 Hill 50.

The opinion of the court was delivered, February 2d 1863, by STRONG, J.—If the public acquire a right of way over a race previously dug by the owner of the land through which it passes, the burden of building and maintaining such a bridge as is necessary for the highway rests upon the public.   On the other hand, it is equally clear that if the owner of a mill make a channel to it across a highway already in existence, and build a bridge over the channel, which is used as a public bridge, he shall be bound to repair.   This is laid down in 1 Rolle Ab. 368, title *Bridges,* pl. 2, and it has ever since been recognised as law : Perley *v.* Chandler, 6 Mass. 454; Dygert *v.* Schenk, 23 Wendell 446 ; Woodring *v.* Forks Township, 4 Casey 355.   The reason given is that the bridge is erected for the private benefit of the owner

of the mill. To this might be added that it is made necessary by his interference with the way in which the public had acquired a right. Though he may dig and maintain a race through a highway, the fee simple of which belongs to him, he cannot do it at the expense of the rights of the public. He must preserve the highway without any diminution of the right to its enjoyment which the public had obtained before, and hence his obligation to build and maintain a bridge such as shall keep the way in substance as good as it was before he dug his race. His obligation is proportioned to the public right. If the way be only a footway, a bridge to accommodate foot passengers is all that he is required to build or maintain. If the public subsequently acquire greater rights, his obligation is not increased, for with those enlarged rights he has not interfered.

We understand the court below to have instructed the jury in accordance with these principles. When the race was dug, the public had acquired the right to a way which had been opened and upon which repairs had been made by the supervisors of the township. Then it became the duty of the landowner, on excavating the race across the way, to build a bridge over the race adequate for the road as it was then open. Beyond the road as open, the public had no right of way. Such a bridge was constructed, so far as appears, satisfactorily to the public authorities. Some years afterwards, by order of the Court of Quarter Sessions, a new road was laid out and opened, partially on the site of the old road, crossing the race, but of the width of thirty-three feet, while the width of the old road at the race-crossing was but twenty feet. For a time, travelling on the new road was over the bridge as it had been, but the bridge having been carried away, a new one was erected wider and higher than the former, to accommodate the road as it had been located by order of the court. The question raised on the trial was whether the defendants, who succeeded the owners at the time the race was dug, are liable for repairs to this second bridge. Upon this subject the charge to the jury must be considered as a whole. We may not extract a single sentence and overlook its connection and qualification. The substance of the instruction given to the jury was that there was nothing in the single fact that a new road had been laid out, that relieved the defendants from their obligation to maintain the bridge; that if the new road was substantially the same as the road which was there when the race was cut, they were bound to keep the bridge in repair. On the other hand, they were instructed that if the new road differed materially from the old one at the race-crossing, if it was not on the same ground, or was widened, and in consequence of the change a different bridge was required to accommodate the new and different rights of the public, the defendants were not bound to

[Phœnixville *v.* Phœnix Iron Co.]

construct such a bridge or keep it in repair. The part of the charge singled out for exception is but a substantial repetition of this instruction. It is not a just view of it which sees any such doctrine as the plaintiff in error urges is found in it. The jury could not have understood it to mean that if the new bridge would accommodate more passengers than the old one, the defendants were not liable. The language of the court referred to different rights of the public, not to a difference in the number of travellers along the highway. With such new rights, if any there were, the defendants had never interfered, and therefore repairs of a bridge erected in pursuance of these rights could not be demanded of them. This part of the charge was at least as favourable to the plaintiffs as they had a right to demand.

The second assignment of error is that the court erred in charging the jury that the plaintiffs could not recover for money expended in repairing the footway alongside of the county bridge over French creek. The assignment, we think, is well founded. The footway was erected by the vendors of the defendants in 1850, not as the price paid for a franchise given, but as a substitute for a portion of the public right appropriated to themselves. By the Act of Assembly, they were allowed to occupy the bridge over French creek with a railroad for their private use, but they were required by the same act to construct a convenient and substantial footway over the creek, to be attached to the bridge on the west side as soon as their railway should be laid on the bridge. The railroad was constructed over the bridge as authorized by the act, and, as required, the footway was built. With this, the court was of opinion the obligation of the defendants was satisfied. It is true, the language of the act is that the footway shall be *constructed* as soon as the railway is laid on the bridge. It does not in words say anything of repairs. But the act is to be construed according to its intention. That intention, it is true, is to be gathered from its words, but not from any single word. We must ascertain its spirit and meaning from all the language employed. Now, the requirement of a footway, contemporaneously with the occupation of the bridge by a railway, makes it clear that the legislature did not intend to diminish the rights of the public or the convenience of foot-passengers. It was evident that the use of a railway on the bridge would obstruct and endanger passage on foot. It was most just that while the grantees of the privilege continued to use the bridge for such a way, and for their private advantage, they should provide other means of passage equally convenient and lasting with those which the public would have enjoyed had it not been for their interference. It is a fair presumption that the legislature never intended to give away public rights, or to impose burdens upon any local community, without compensation.

[Phœnixville *v.* Phœnix Iron Co.]

Yet if the construction of the act contended for by the defendants is correct, a burden has been imposed upon the plaintiffs, namely, the maintenance of the foot-bridge, solely for the private advantage of those who are using the railway. For their benefit the footway was erected, and for their benefit it is maintained. There is then the same reason for requiring them to repair, that there was for requiring them to erect. We think, therefore, the Act of Assembly imposed a continuing obligation to provide the designated substitute for the diminished facility and safety of passage across the bridge, so long as the public right shall thus be abridged. And such has been the construction given to similar language in other legislative acts. Thus, in Rex *v.* The Inhabitants of the County of Kent, 13 East 220, it was ruled that a company, which, by Act of Parliament, had been empowered to make a river navigable and to take tolls, "and to amend or alter such bridges or highways as might hinder the passage or navigation, *leaving* them or others as convenient in their room," was bound to repair a bridge which, under the act, they had built forty years previously to the indictment. Lord Ellenborough declared it to be a continuing condition, and all the judges held that the word "leaving" imported both building and continued maintenance, because the alteration in the old highway was made for the purposes of the company. The doctrine of Rex *v.* The Inhabitants of Lindsay, 14 East 317, seems to be that when the acts of a grantee of a public franchise have rendered a bridge necessary, the law, without any statutory requisition, imposes upon the grantee the duty not only of erecting, but maintaining the bridge. There is nothing in Meadville *v.* The Erie Canal Company, 6 Harris 66, which is in conflict with these views. In that case, the original obligation to build the bridge was never upon the Commonwealth or upon the company, and of course there was no liability on them to repair. There was error, then, in instructing the jury that the defendants are not liable for the money expended in repairing the footway.

Judgment reversed, and a *venire de novo* awarded.