## JOHN WALLACE *et al.* v. JOSEPH EVANS.

DAM — *Backwater on Highway — Defective Crossing — Mules Drowned — Liability.* A party who built a dam, causing the back-water to fill a ravine across which ran a public highway, made a causeway composed of logs, brush, stone and earth at the place where the public highway ran across the ravine, and made a better way than existed before the construction of the dam. The public used it, and it was for a time maintained and repaired by the overseer of highways of the road district. *Held*, That the owner of the dam was not chargeable with the maintenance and repair of the highway, and was not liable for the value of mules whose death was occasioned by the causeway being out of repair.

*Error from Norton District Court.*

THE case is stated in the opinion.

*L. H. Thompson*, for plaintiffs in error.

*John R. Hamilton*, for defendant in error.

Opinion by SIMPSON, C.: The plaintiff below brought his action to recover the sum of $400, the alleged value of a

pair of mules, and $200 as exemplary damages.   He alleged that in August, 1882, Wallace constructed a dam across a creek that caused the water to fill up a ravine across which ran a public highway that had been located, opened and traveled long before the construction of the dam; that the water had flowed into the ravine until, at the time complained of, it was ten feet deep, and was a hazardous and dangerous obstruction to travel on said highway; that Wallace had sold said dam to Railsback, who, at the time the injury occurred, owned and maintained said dam; that on the 9th day of September, 1885, the plaintiff with his team of mules was traveling on said highway, with no knowledge of the dangerous condition thereof at the place it crossed the ravine, and that in attempting to cross said ravine his two mules were drowned in the water flowing into said ravine, by reason of the construction of said dam.   The defendants demurred to the petition, and their demurrer was overruled.   They then answered, alleging among other things, that at the time the dam was built, they caused a safe and suitable embankment to be made of brush, earth and other material across said ravine, on the line of said highway, thereby making a safe and suitable crossing; that this crossing was turned over to the road district and accepted by it, and these defendants were released from any further liability or any obligation to keep up and maintain said crossing.   They also pleaded contributory negligence.   Cause tried at April term, 1887, by the court, who rendered a judgment for $400.   A motion for a new trial being overruled, Wallace and Railsback bring the case here.   They claim that the trial court erred in overruling their demurrer to the petition and evidence; that the right of action is barred by the statute of limitations, as the dam was constructed under § 14, ch. 66, Comp. Laws of 1885; that there was a misjoinder of parties defendant; that there was an obligation resting on the road district to maintain the crossing and keep it in repair; that the evidence shows contributory negligence.

I. The petition in this case alleges that the place at which

the loss occurred to the plaintiff below was a public highway, and alleges an obstruction thereof that was the cause of the loss of the mules. The erection of a dam caused the water to fill up a ravine across which the public highway ran. The man who built the dam constructed across the ravine an embankment of stone, logs, brush and earth, that made a good, safe and reliable crossing as long as it was maintained in the condition in which it was constructed. It was shown at the trial that the road overseer had caused work to be done thereon, and that for some years it was constantly used and reasonably safe. Wallace, one of the plaintiffs in error, built the dam and the embankment, and after owning the mill-property, including the dam, for about one year, sold and conveyed it to one Page, who subsequently sold it to Railsback, the other plaintiff in error, who owned the dam at the time of the loss of the mules. On this state of facts it must be apparent that no liability can possibly attach to Wallace for the loss. Putting this question in the strongest possible attitude for the defendant in error, and assuming for that purpose that the erection of the dam and the back-water in the ravine was a continuing nuisance, yet still Railsback, and not Wallace, is responsible for the damages occasioned by it. When Wallace sold the dam and some one else purchased it and assumed all liability, there seems to be no point of view in which Wallace could be held longer responsible. The judgment against him is wrong.

II. To constitute an obstruction to a public highway, it must appear that the public travel by reason thereof is actually hindered and endangered. No private action can be maintained if the obstruction continues and becomes a common nuisance on account of the nuisance *per se;* but if any individual suffers a more special injury than any other, from the continuance of such a nuisance, he has his action therefor. All this is alphabetical law, and affords a sure basis upon which the argument in the case must rest. The controlling question in this case is, who is responsible for the care and repair of the highway at the point where it crosses the ravine?

It is as much a part of the highway as any other portion of its length or breadth. The people at large have the right to the free and uninterrupted use of it, not upon the sufferance of the men who built the embankment, but as a matter of right. It has been held that if a man builds a bridge that is useful to the public in general, it is the duty of the public authorities to repair it, notwithstanding it may be of benefit to the builder. (*Rex v. West Riding of Yorkshire*, 5 Burrows, 2594; *Heacock v. Sherman*, 14 Wend. 58; *Requa v. City of Rochester*, 45 N. Y. 129; Thompson on Highways, 3d ed., 12.) If a bridge is erected over a natural stream by a man for his own benefit, and it is of public utility, and is used by the public, the public is bound to keep it in repair; for in such case, although the bridge is of advantage to the man who built it, he did not create the necessity for it. (*Dygert v. Schenck*, 23 Wend. 446.) Where a person erected a mill and dam for his own profit, and by so doing deepened the water of a ford, through which there was a public highway, but the passage through which, before the deepening, was very inconvenient, and the miller built a bridge over it, and the public used it, and the miller had repaired it, the court held that the county, and not the miller, was chargeable with the repair. (*Rex v. County of Kent*, 2 M. & S. 513.) All public bridges are *prima facie* repairable by the public. Most, if not all, of the earlier cases that have any bearing on this question, make this distinction: if the bridge is built by a private person, and it is manifestly to the interest of the public to use it, and they do use it, and the way is better than it was before the bridge was built, the public is chargeable with its repair; but if the improved way is not better than it was before, the public receives no benefit. This is certainly a very liberal interpretation of the law so far as the public is concerned. If the principle of these cases is applied to the facts developed on the trial of this case, there can be no recovery against Railsback, as the duty to keep the crossing in repair is devolved upon the road district. Our statutory enactments, requiring railroad corporations to restore to its former

condition any public highway it may cross in the course of its construction, seem to have this principle in view. This court, construing this provision, held, that when a railroad company restores the crossing of a public highway to the condition that existed at the time of the construction of its line across the highway, the railroad company is under no obligation thereafter, under this provision, to maintain it in a safe and sufficient state of repair. (*M. K. & T. Rly. Co. v. Long*, 27 Kas. 684.) It can be said that it is the statute that relieves the railroad company from the liability to maintain the highway after it has been restored to its former condition, and that there is no statute that operates in favor of the defendants in error. While it is true that the courts in this country have almost universally refused to hold the public to a common-law liability to repair public highways, the statutes of every state establish their liability, and this is so universal, that *prima facie*, they must be chargeable therewith; but the question in this case is, has not the public, by its acceptance and use of this roadway, and by its control and repair, assumed the liability? It cannot be successfully contended that this particular fill or causeway across the ravine is not a part of the public highway. The public has the absolute control of it. The man who built it has no right to obstruct it. If he lives in that road district he can be compelled to contribute money or labor to its maintenance and repair. The moment he finished its construction it became a part of the public highway, and his control ceased for every purpose. It then necessarily became the statutory duty of the road district to keep it in repair. The record discloses that the place at which these plaintiffs in error filled the ravine, they made a better and safer roadway than existed before. It is shown that it was used for some years by the public. There is some evidence tending to show that the road overseer of the district caused work to be done on it, and at times repaired it. It is not shown that it was located on the land, or that it was erected for the personal benefit of either of the plaintiffs in error. This case was tried and decided upon the theory that

both Wallace and Railsback were chargeable with the maintenance and repair of a public highway, and this was error.

We recommend that the judgment be reversed, and a new trial granted.

By the Court: It is so ordered.

All the Justices concurring.