Town of Watertown et al. *v.* City of Waterbury.

Maltbie, C. J., Brown, Jennings, Ells and Dickenson, Js.

Argued October 5—decided December 11, 1945.

*John H. Cassidy* and *J. Howard Roberts,* for the appellants (plaintiffs).

*Maurice T. Healey,* with whom was *Edward J. Mc-Donald,* for the appellee (defendant).

MALTBIE, C. J. The question presented in this case is: Are the plaintiffs entitled to a mandatory injunction to compel the defendant city to repair a bridge which it constructed over a portion of a reservoir it was establishing to furnish water to its inhabitants, in substitution for a highway bridge previously existing across a stream which was merged into the reservoir? The plaintiffs are two towns, the dividing line between which ran in the course of the stream under the old bridge and now runs in the bed of the reservoir under the new bridge, and an individual who owns land abutting a highway connecting with one of the approaches to the new bridge and who, it is alleged, with other owners of property and residents in the vicinity has used and desires to continue to use it. The court ren-

dered judgment for the defendant and the plaintiffs have appealed.

While the plaintiffs have assigned many errors in connection with the finding, they press none of these in their brief; on the contrary, they state that there is little dispute as to the facts. The defendant, in constructing the reservoir, was acting under a special act of the legislature empowering its common council to purchase or take lands and waters in Litchfield and New Haven counties for the purpose of providing a water supply for its inhabitants. 11 Spec. Laws 322. The act authorized use of land under railroads, highways or private ways, with a provision that the surface was to be restored to its original condition and all damages caused, including any due to interruption of travel, were to be paid; it did not authorize the discontinuance or change of any highway. The stream which the former bridge crossed ran through property which was purchased for the reservoir, and a highway passed to and over a bridge which crossed the stream. The bridge, made of wood and about thirty feet long, was suitable to accommodate only light traffic, but it was adequate for the small amount of use it had. In 1893, the defendant purchased certain land which it utilized in the construction of the new bridge and its approaches; it secured and accepted a warranty deed which reserved to the grantors certain rights to continue to occupy and use parts of the land, and to the crops upon it, but with a provision that the defendant might enter and construct "a new highway" if it deemed it necessary. About a year later, the defendant destroyed the bridge and dug up a portion of the highway leading to it. While the plaintiff towns and the public generally knew that this was being done and no complaint was made, there is no record of any formal discontinuance of the old highway or bridge.

The defendant proceeded to construct, about four hundred feet to the north, over a portion of the reservoir where the stream formerly ran, a steel bridge with a plank floor, about sixty-eight feet long, together with approaches to it and a short section of road, thereby connecting it with highways on each side of the stream. A few years later, having brought to a higher level the water in the reservoir by increasing the height of its dam, the defendant raised the bridge and its approaches. The bridge was built with a view to the type of traffic common at the time of its construction and is not strong enough to accommodate the heavy traffic of the present day. It serves the convenience of the defendant in enabling men, trucks and other vehicles to cross. It has been used by all persons finding it convenient to do so, in the same manner and to the same extent as was the old bridge, at least until, during the pendency of this action, the plaintiff towns erected signs at the ends of the bridge, one stating that it was not a public way and the other that it would hold only two tons. The defendant has at no time restricted its use. There is no record that either of the plaintiff towns has ever taken any action laying out, accepting or establishing the bridge and its approaches as a highway. There was no evidence of any agreement on the part of the defendant to repair the bridge for the use of the public. It did, however, make repairs from time to time, the last time in 1938, as a result either of its own inspection or of complaints made to a selectman of one of the plaintiff towns who in turn notified the defendant, but in 1943 it definitely refused to make any further repairs. The bridge is not now reasonably safe for public travel and is in need of repair. Merely repairing it would not, however, make it reasonably safe for accommodating the heavy traffic of the present day; to do that, it is, or will be in the

near future, necessary to rebuild it at an estimated cost of about $15,000. Only two witnesses appeared who made any present use of the new bridge; its discontinuance would not cause them or anyone else any material or substantial damage; and it is not necessary for use by the public, the plaintiffs or the defendant.

The complaint alleged that the bridge and its approaches had never been laid out by the selectmen of or accepted by either of the plaintiff towns but that the defendant had permitted and invited their use by the public. The plaintiffs maintained at the trial and before us that they constituted a private way which the defendant invited and permitted the public to use. The trial court made an equivocal finding that they did not constitute "a private highway which the defendant had the legal burden of maintaining for the use of the public"; it stated in its conclusions that the plaintiffs' proof went no further than to show that they constituted a private way over which the public had been allowed to travel without invitation or limitation, under an implied license revocable at the will of the defendant, but that the plaintiffs did prove such a use by the public as would show acceptance sufficient to establish a dedication as a public highway if the facts were such that an intention on the part of the defendant to offer the bridge and its approaches for that purpose should be found. These conclusions are not assigned as error. The plaintiffs' case, as presented by the complaint, their claims at the trial and the finding, is founded upon the theory that the bridge and its approaches constitute a private way, and we must dispose of this appeal upon that basis.

While the plaintiffs do not claim that there was evidence of any agreement by the defendant to maintain the bridge, they do contend that one is necessarily to be implied from circumstances surrounding the de-

struction of the old and the building of the new bridge. The absence of any reference to any agreement in the records of the municipalities who are parties to this action would be strong evidence that no formal contract to which they were parties was made. An agreement would necessarily involve the discontinuance of a portion of the old highway. In the situation before us, there were only two ways in which this could legally have been accomplished. One was through the discontinuance of the highway by the selectmen, but their authority to take that action was conditioned by the requirement that it have the approbation of the towns in which the highway lay; General Statutes, § 1442; *New London* v. *New York, N. H. & H. R. Co.*, 85 Conn. 595, 601, 84 Atl. 114; and such approbation, if given by either of the plaintiff towns, would also be a matter of public record. The other way was by court proceedings under § 1443 of the General Statutes, which authorizes the discontinuance or alteration of highways necessary in the establishment of a water supply, but there is no pretense that the defendant inaugurated such action. In the absence of any record concerning the discontinuance of the highway, it cannot be assumed that the selectmen entered into an agreement involving action which, without approbation of the town, they had no right to take. Indeed, it is as reasonable to believe that there was at most some informal understanding that, upon the destruction of the old bridge, the defendant would build another, an understanding which may well have not involved any agreement by the defendant to keep the new bridge in repair and which very likely lacked the definiteness necessary to a binding contract. We cannot hold that there was a valid agreement by the defendant to maintain the new bridge and its approaches.

The principal claim of the plaintiffs is that an obli-

gation on the part of the defendant to maintain the bridge it built arose as a matter of law out of the circumstances we have stated. They appeal to an ancient common-law principle stated in Rolle's Abridgement, Title "Bridges," and confirmed in *Regina* v. *Isle of Ely,* 15 Q. B. 827, 843, where, in the case of the construction of a bridge over a drain made by certain "adventurers" under authority of an act of Parliament, the court, after reviewing earlier decisions, said: "And that principle seems to be this, undoubtedly a just one, that, where the act making the bridge necessary, though authorized to be done, interferes with the public right, is done primarily for private purposes, and the public use, from which the public benefit is inferred, is to be referred only to the act, because made necessary by it, the public indeed remaining only with the same convenience which it had before, the authority to do the act is conditional only, equally whether the condition be expressed or implied; and the condition also is in both cases continuing so long as the act continues whereby the public right is interfered with. And, as the obligation here insisted on arises from the party's own act, which would be unlawful unless such obligation could be complied with, the case steers clear of any consideration as to the existence of funds; for the party bringing the duty upon himself for his own purposes cannot object the want of funds for performance of it." This case was the basis upon which the court reached its decision in *Hertfordshire County Council* v. *New River Company,* [1904] 2 Ch. 513, 520. In *Dygert* v. *Schenck,* 23 Wend. (N. Y.) 446, 450, a like result was reached, although the court did not have before it the case of *Regina* v. *Isle of Ely,* supra, but proceeded upon the basis of earlier English cases. The principle has been recognized in a number of other cases in this country. *Perley* v. *Chandler,* 6 Mass. 454,

458; *Woburn* v. *Henshaw*, 101 Mass. 193, 199; *Indianapolis* v. *Indianapolis Water Co.*, 185 Ind. 277, 285, 113 N. E. 369; *Phoenixville* v. *Phoenix Iron Co.*, 45 Pa. 135; *Eyler* v. *Allegany County*, 49 Md. 257, 268; *West Bend* v. *Mann*, 59 Wis. 69, 72, 17 N. W. 972; *Richardson County* v. *Drainage District*, 92 Neb. 776, 779, 139 N. W. 648; note, Ann. Cas. 1914 A 551; see *Dyer County* v. *Railroad*, 87 Tenn. 712, 716, 11 S. W. 943; *Chicago* v. *Pittsburgh, C., C. & St. L. R. Co.*, 146 Ill. App. 403, 414.

In these cases, the courts were considering the construction, not of a private bridge, but of a highway bridge where none had existed before. Underlying the decisions is the basic consideration that the burden of work and expense consequent upon a change in a highway which one makes for his own benefit should not be thrust upon the public. We have found few cases where a person has replaced an existing highway bridge by another in the course of work done for his own benefit. In the frequently cited case of *Rex* v. *West Riding*, 5 Burr. 2594, 98 Eng. Rep. R. 364, the bridge involved had been erected by the inhabitants of the riding for use by the public and the question was whether they or the inhabitants of the county were bound to repair. In *Wallace* v. *Evans*, 43 Kan. 509, 23 Pac. 596, Wallace, after he had built a dam which caused water to flood a ravine through which a public highway ran, constructed a causeway of brush, earth and other material to carry the highway across; and the court held, in a rather summary decision, that the causeway became a part of the highway, and that Wallace was not bound to repair it. In *Richardson County* v. *Drainage District*, supra, the facts do not clearly appear, but apparently the defendant changed the course of a drainage canal and built a bridge over it in place of the one which had crossed the old chan-

nel; and, in holding that the county was bound to keep the new bridge in repair, the court said (p. 785): "To maintain the new bridge would impose no greater burden on the public authorities than to maintain the old one, and the straightening of the channel and prevention of floods would undoubtedly tend to lessen the damages which public roads and bridges would suffer from such conditions." We apprehend that in this quotation is suggested the test for determining whether the builder of a new bridge in place of one formerly existing is bound to keep it in repair. If the purpose is to serve the interests of the builder and the maintenance of the new bridge would impose a greater burden upon the municipality than it would otherwise have had to bear, the duty to repair should rest on the builder.

A consideration of the basis upon which these decisions rest at once makes it evident that the law stated in them cannot be applied in a situation where, as appears in the finding in this case, the plaintiff's proof goes no further than to show that the new bridge and its approaches constitute a private way over which the public is allowed to travel under a license revocable at the will of the defendant. The duty to repair in such a case would not be based upon the injustice of permitting one for his own benefit to increase the burden of the statutory obligation resting upon municipalities to repair highways, for there is no such burden. If we regard the new bridge as a private way, no duty to repair could rest upon the plaintiff towns. In *King* v. *Parts of Lindsey*, 14 East 317, 322, 104 Eng. Rep. R. 623, Lord Ellenborough said that "the inhabitants of a county could never have, by law, a permanent burthen thrown upon them to repair a bridge of which they had not the permanent use and enjoyment secured to them." The defendant in this case would be

under the same duty as any landowner who licenses persons to pass over a private way across his lands.

As the case stands before us, any person who passes over the bridge does so in the exercise of a private, not a public, right. The plaintiff towns cannot represent the interests of their individual inhabitants in the assertion of private rights. *Connecticut Light & Power Co.* v. *Southbury,* 95 Conn. 242, 247, 111 Atl. 363; *Morrell* v. *Brooklyn Borough Gas Co.,* 231 N. Y. 405, 408, 132 N. E. 129; *Consolidated Gas Co.* v. *Newton,* 256 Fed. 238, 246. We must, in the decision of this case, accept the conclusion of the trial court that the individual plaintiff in using the bridge was a gratuitous licensee. Any right he had as such was revocable at the will of the defendant. He had no such interest as would entitle him to compel the defendant to make repairs to the bridge. See 3 Tiffany, Real Property (3d Ed.), p. 403.

There is no occasion to consider other claims made to us by the defendant. Taking the case as it stands on the record, none of the plaintiffs was entitled to the relief claimed.

There is no error.

In this opinion the other judges concurred.