[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Robert L. and Linda M. Walton brought this action against the defendants, Town of New Hartford and Alan and Karen Habig seeking an injunction and monetary damages for injury to their property known as lot 16 on Lair Road in the Town of New Hartford. Mr. and Mrs. Habig have filed a third party complaint against James M. and Joanne K. Parsons the former owners of lot 17 on Lair Road, now owned by the Habigs.
On September 10, 1986, Mr. and Mrs. Walton granted an easement to the town providing in pertinent part as follows:
 WHEREAS, the Town of New Hartford has constructed two drain pipes that encroach approximately forty feet onto the property at the southeast corner, which discharges large amounts of water onto said property;
 NON, THEREFORE, in consideration of $1.00 and other valuable considerations received from the Town of New Hartford, the owners do hereby grant to the Town of New Hartford a permanent easement to discharge water onto the aforesaid property from these two drainage pipes, provided that the Town of New Hartford complies with the following conditions:
 1. The Town shall construct, or cause to be constructed, an enclosed catchbasin that ties directly into the two drainage pipes described above.
 2. This catchbasin also shall be connected, to a discharge drainage system constructed by the owners, which system shall discharge said water by underground pipe running approximately 200 feet in a northwest direction across the property and into a catchbasin located at the tree line adjacent to the northern boundary of the property and approximately 240 feet from Lair Road;
 3. The Town shall be responsible for maintaining the enclosed catchbasin and the discharge system relating to the drainage of water from the two drainage pipes noted above.
 4. Any replacement or modification of the two drain pipes by the Town shall be done only with prior, written consent of the owners. In no event shall the discharge of water from the two drain pipes increase beyond the reasonable capacity of the drainage system as constructed concurrent with the execution of this Agreement.
 In the event of the Town's failure to comply with any of the aforesaid terms, the owners shall have the option of either terminating this easement and blocking off the drainage pipes, or seeking equitable or legal relief from a court of law to CT Page 1066 enforce these terms.
 Any such termination by the owner must be preceded by written notice to the Town by certified or registered mail, giving the Town 30 days to cure any deficiency. No such termination shall be valid without said notice.
On November 29, 1990, the plaintiffs filed an amended complaint in thirteen counts, four of which were directed to the defendant town. After the plaintiffs rested, the court dismissed the second, third, and fourth counts leaving only count one. It provides in pertinent part that, "The defendant Town of New Hartford has breached its covenant to maintain the drainage system in accordance with the terms of the easement in that it has allowed silt, sand and salt to collect in said system, hampering its function, and causing water, salt, silt and sand to discharge out of the drainage system and onto the plaintiff's property, causing erosion, exposing root systems and causing ecological damage, creating wetlands, causing damage to the plaintiffs' landscaping and seriously impairing the plaintiffs' ability to use and enjoy their property."
From the evidence, the court finds that the plaintiffs have sustained their burden of proof that the Town of New Hartford has failed to properly maintain "the enclosed catchbasin and the discharge system. . ." Plaintiffs' exhibit 12 shows dark polluted water which had to discharge from the town pipes since the evidence is clear that any water from the Habig property did not disclose such properties.
Under these circumstances, the plaintiffs are entitled to an order directing the town to periodically, as necessary, clear the catchbasin on the plaintiffs' property as well as that located on Lair Road which feeds into the easement pipes.
The easement provides for a reasonable attorney's fee and litigation expenses in the event of successful court action. The plaintiffs have submitted a bill from a consulting engineer, Bernard J. Bisson, in the amount of $1,900.00 and their attorney's affidavit in the amount of $8,675.00. In view of the fact that much of the time and effort resulted from the claim against the Habigs and their claim against the Parsons, all fees may not be directed to the town. Accordingly, the court awards one half of the Bisson bill, or $950.00 and an attorney's fee of $3,000.00.
The claim against Mr. and Mrs. Habig arises out of the maintenance of a drainage pipe running from their property to a catchbasin on the Walton property. Mr. and Mrs. Parsons acquired the adjoining lot, number 16, in the fall of 1985 and thereafter the plaintiffs acquired their property on March 13, 1986. After the granting of the easement to the Town in September, 1986, the Waltons and the Parsons entered into discussion concerning a request by the Parsons to tie into the drainage line on the Waltons property. While orally agreed to, the permission was never reduced to writing in the form of a valid easement. The right CT Page 1067 which the Parsons claim to have obtained was an interest in the Waltons real estate and therefore within the statute of frauds. Conn. Gen. Stat. 52-550
(4). Foot v. New Haven and Northampton Company and Others, 23 Conn. 214,223. What they did receive was a license to lay a pipe and connect to the discharge system on the Walton property. Such a right may be obtained orally, Occum Co. v. A W Sprague Mfg. Co., 34 Conn. 529; Tiffany Real Property, Third Ed., Vol. III, 830.
Since the Parsons obtained only a license, it was revocable at the will of the Waltons. "A license in real property is defined as a personal, revocable and unassignable privilege, conferred either by writing or parol, to to one or more acts on land without possessing any interest therein." (Emphasis added) 25 Am.Jur.2d. Easements and Licenses 123. "Generally, a license to enter premises is revocable at any time by the licensor. Id. 128." State v. Grant, 6 Conn. App. 24, 29. As stated in Foot v. New Haven and Northampton Company and Others, 23 Conn. at 223; Watertown v. Waterbury, 132 Conn. 441, 450.
 The right perpetually to divert water upon that land, as claimed by the defendants, would be an incorporeal hereditament, and therefore an estate or interest in it; and such a right, the license, proved by the defendants, would be ineffectual to convey. To hold the contrary would be a direct abrogation of the statute of frauds, which requires all contracts for `the sale of lands, tenements, or hereditaments, or of any interest in or concerning them,' to be in writing. The privilege, therefore, conferred on the defendants by the parol request, and agreement of Uriah Foot, is reduced to a mere license, although in its terms, it was a more extended grant. The authorities on this point are uniform.
 It is equally well settled, that a mere license, which is only an authority or power to do particular acts, uncoupled with an interest in the subject of those acts, (serving simply to justify such acts, while leaving the estate, and all the incidents of ownership, in the proprietor of the land,) is, in its nature, revocable. If it were not revocable it would transfer to the licensee an interest in the land; it would have the effect of a grant.
In view of the fact that the license to the Parsons was revocable, it was not assignable to the Habigs. Prince v. Case, 10 Conn. 375. Aside from this legal proposition, the license was revoked by letter dated December 2, 1988 from Mr. and Mrs. Walton to Mr. and Mrs. Parsons. It states in part that no easement was granted and "since this is not a `privilege' we are willing to grant you or any new owners, we are informing you to stop or cease from directing the flow of water by pipe into our catch basin." From this it follows that Mr. and Mrs. Habig acquired no rights to continue the tie-in to the Waltons' drainage system and they must therefore be enjoined from further use. Accordingly, it is ordered that on CT Page 1068 or before June 1, 1991 the defendants Alan and Karen Habig shall cease and desist the use of the pipe leading from their property on lot 16 to the property of Robert L. Walton and Linda M. Walton, known as lot 17; at the option of the plaintiffs, the pipe shall be removed with ground returned to its present condition or blocked off to prevent future use.
 III
In their third party complaint, Mr. and Mrs. Habig seek indemnification and attorneys fees against Mr. and Mrs. Parsons. On December 2, 1988, plaintiffs Robert and Linda Walton sent a letter to the Parsons by regular mail demanding that the drain pipe be disconnected. This demand letter was received by the Parsons sometime before the sale of their home to the Habigs on December 19, 1988. Yet neither the letter nor its contents was ever disclosed to the Habigs. In fact, the Parsons affirmatively represented in a No Survey Affidavit that no claim of any nature was pending against the property at the time of the closing. Accordingly, the Habigs purchased the Parsons property in full reliance on the Parsons affidavit which states in pertinent part:
 The undersigned have owned the property for the last three years immediately preceding the date hereof [December 19, 1988] and during said period of ownership the undersigned have had no knowledge of notice of any claim of ownership or other interest . . .by any other person for or in any or all of the property, including but not limited to any boundary line disputes or disagreements which may affect the size or location of improvements (e.g., fences, driveways) on the neighboring property [Plaintiffs' property], and the undersigned have no knowledge of any encroachments of [sic] improvements which affect the property of [sic] the improvements thereon. (Emphasis added)
In fact, the Parsons admit that they knew at the time they signed this Affidavit that plaintiffs had insisted, "No written easement was granted by us for you to direct this flow of water into the catch basin." The Parsons also knew that plaintiffs demanded that the Parsons "correct this matter within thirty days." Id. Yet the Parsons never informed the Habigs of plaintiffs' demand, and the Habigs purchased the property in reliance on their own understanding that no claims were pending. The signing of this Affidavit was admitted by Mr. Parsons at trial. The Affidavit states, in pertinent part, that "the undersigned makes this Affidavit for the purpose of inducing Alan R. Habig to purchase the property, for the purpose of inducing Prudential Insurance Company of America to grant a mortgage on the property, and for the purpose of inducing Title USA Insurance Corporation of New York to issue a policy of title insurance in the amount of $266,000.00 knowing they will rely upon the truth of the statements herein made." The Habigs did, in fact, rely on the truth of the statements made in this Affidavit. The Affidavit affirmatively represents that "the undersigned owned the property for the last three years immediately preceding the date hereof (December 19, 1988), CT Page 1069 and during said period of ownership, the undersigned have had no knowledge or notice of any claim of ownership or other interest by any other person for or in all or any part of the property including, but not limited to, any boundary line disputes or disagreements which may affect the size or location of improvements on the property or the size or location of improvements on neighboring property, and the undersigned have no knowledge of any encroachments or improvements which affect the property or the improvements thereon." (Emphasis added)
The evidence is undisputed that Mr. Parsons was aware of a dispute or disagreement with the Waltons regarding the location of a 4 inch drainage pipe once he received the December 2, 1988 letter from the Waltons. Mr. Parsons, therefore, had an affirmative duty to disclose this dispute or disagreement to the Habigs prior to selling his house to them. He admitted that he did not make any disclosure. Furthermore, by signing the No Survey Affidavit, Mr. Parsons made an affirmative representation that he had no knowledge or notice of any disputes or disagreements which may affect the size or location of improvements on his or neighboring property. The December 2, 1988 letter from the Waltons complained of the location of a four inch drainage pipe running from the Parsons' foundation across the property line onto the Walton property. This four inch drainage pipe is an improvement upon the neighboring property as contemplated by the terms of the No Survey Affidavit. If there was any doubt at all as to what the terms of this Affidavit meant, Mr. Parsons should have disclosed the December 2, 1988 letter to the Habigs. By failing to disclose these facts, and by affirmatively representing that no dispute or disagreement as to improvements on neighboring property existed, Mr. Parsons misrepresented existing fact and thereby induced the Habigs to purchase his home. Accordingly, the Parsons are liable to the Habigs on the third party complaint for having misrepresented existing fact, thereby inducing the Habigs to purchase the property.
In Franchey v. Bannes [Hannes], 152 Conn. 372, 379 (1965), the Connecticut Supreme Court held that once a vendor assumed to speak, "he must make full and fair disclosure as to the matters about which he assumes to speak". He must avoid a deliberate non-disclosure. To constitute fraud by non-disclosure or suppression, "there must be a failure to disclose known facts and a request or an occasion or a circumstance which imposes a duty to speak". This duty arises when a vendor of property conceals from the buyer a material fact affecting it. See also, Wedig v. Brinster,1 Conn. App. 123, 130-131 (1983).
Mr. Parsons had a duty to disclose the December 2, 1988 letter to the Habigs prior to or during the December 19, 1988 closing. Furthermore, by signing the Affidavit, Parsons imposed upon himself an affirmative duty to disclose all known facts regarding the Waltons' dispute. Mr. Parsons signed an Affidavit stating that he had no knowledge or notice of any disputes or disagreements regarding the location of improvements on his or neighboring property. The Affidavit was a material misrepresentation of fact because the evidence is undisputed that Parsons received a letter from CT Page 1070 the Waltons dated December 2, 1988 in which he was given notice that the Waltons were disputing his right to maintain a four inch drainage pipe from his foundation drain to a catch basin located on their property. Mr. Parsons had an affirmative duty to disclose his knowledge of this fact to the Habigs. By not doing so, he induced the Habigs to purchase the property without knowledge of all material facts affecting the property. By purchasing the property without knowledge of all material facts, the Habigs have been damaged by incurring expenses, including costs of litigation and attorneys' fees and may be subject to money damages and the costs of complying with a court order, sought by the Waltons if the court deems such an order appropriate.
Accordingly, third party defendants are liable to the third party plaintiffs on the first and second counts of the third party complaint. The Parsons, and not the Habigs, are the parties required to indemnify the Waltons for any judgment that may be rendered on the complaint. Indemnification of the Habigs for any judgment that may be rendered against them in favor of the plaintiffs is the only just and proper remedy.
There can be no question but that the third party plaintiffs have suffered damage as a result of the non disclosure by the third party defendants. What those damages are, however, cannot be ascertained at this time since the cost of any remedial work has not been done, nor has its necessary extent been determined. Likewise, it has not as yet been determined that the elimination of the Habig pipe and allowing surface water to flow naturally will create a nuisance on the Waltons' property prohibited by law.
In Page Motor Co. v. Baker, 182 Conn. 484, at page 490, the Connecticut Supreme Court modified the common enemy doctrine summarized in Tide Water Oil Sales Corporation v, Shimelman, 114 Conn. 182, with the rule of reasonable use. Tide Water stated at page 189:
 Speaking generally, our law may be summarized as follows: A landowner is under no duty to receive upon his land surface water from the adjacent properties, but in the use or improvement of it he may repel such water at his boundary. On the other hand, he incurs no liability by reason of the fact that surface water falling or running onto his land flows thence to the property of others in its natural manner. But he may not use or improve his land in such a way as to increase the total volume of surface water which flows from it to adjacent property, or as to discharge it or any part of it upon such property in a manner different in volume or course from its natural flow, to the substantial damage of the owner of that property.
In Ferri v. Pyramid Construction Co., 186 Conn. 686, the supreme court interpreted Page as follows: CT Page 1071
 This court substituted the reasonable use doctrine for the first branch of the rule of Tide Water Oil. We announced that a repelling landowner would no longer enjoy immunity in dealing with surface water. Instead, we held . . .that, in dealing with surface water, the landowner would be `entitled to take only such steps as are reasonable, in light of all the circumstances of relative advantage to the actor and disadvantage to the adjoining landowners, as well as social utility.' In increasing the possible liability of a landowner repelling surface waters, we did not address, and certainly did not diminish, the existing liability of a landowner diverting surface water under the second branch of the rule of Tide Water Oil.
Following the closing of the pipe and such remedial work is performed, the principles set forth in Page and Ferri will apply to determine the liability of Mr. and Mrs. Habig and ultimately Mr. and Mrs. Parsons. See also, Tiffany Real Property 1990 Cum. Sup. 742, Note 7.[1]
For the present, the court limits its decision on the third party complaint to a finding that the third party plaintiffs, Alan Habig and Karen Habig are entitled to indemnification from the third party defendants, James A. Parsons and John K. Parsons.
PICKETT, J.